EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Queja |
| Pedro A. Roldós Matos<br>Arcelio Maldonado Avilés<br>Lillianette Cortés Soto<br>Edgardo Luis Lloréns Valedón | 2004 TSPR 40<br><br>160 DPR _____ |

Número del Caso: AB-2001-211
              Cons. AB-2001-232
                    AB-2001-217


Fecha: 17 de marzo de 2004


Oficina del Procuradora General:

                    Lcda. Noemí Rivera de León
                    Procuradora General Auxiliar


Abogados de la Parte Querellada:

                    Lcdo. José E. Carreras Rovira
                    Lcdo. José J. Nazario de la Rosa
                    Lcdo. Juan Santiago Nieves
                    Lcdo. Edgardo Luis Lloréns Valedón


Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

| | |
|---|---|
| Pedro A. Roldós Matos | |
| Arcelio Maldonado Avilés | AB-2001-211 |
| Lillianette Cortés Soto | Cons. AB-2001-232 |
| Edgardo Luis Lloréns Valedón | AB-2001-217 |

PER CURIAM

En San Juan, Puerto Rico, 17 de marzo de 2004.

> *La buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal. Le corresponde a todo abogado procurar que prevalezca siempre en los tribunales un ambiente de decoro y solemnidad laborando por mejorar la calidad de la justicia que en éstos se imparte. Para lograr el más adecuado desenvolvimiento y desarrollo del proceso judicial, el miembro de la profesión jurídica debe realizar todas las gestiones propias y legales que estén a su alcance, observando especialmente los cánones siguientes, que señalan algunos deberes particulares que surgen de este criterio general.* Código de Ética Profesional, Criterio General, Parte II sobre Deberes del Abogado para con el Tribunal, 4 L.P.R.A. Ap. IX, P. II.

En esta ocasión debemos ejercitar nuestro poder inherente para reglamentar la profesión de la

abogacía para evaluar el proceder de los abogados de la Sociedad para Asistencia Legal con respecto a los procedimientos judiciales en ocasión de que éstos participaran en una huelga obrero patronal.

I

Los hechos que dieron lugar a las cuatro (4) quejas del caso de autos ocurrieron entre el 16 de agosto y 26 de septiembre de 2001 cuando los abogados sindicados de la Sociedad para Asistencia Legal efectuaron una huelga obrero patronal. Se trata de la conducta de los abogados con respecto a la celebración de procedimientos judiciales señalados ante el Tribunal de Primera Instancia durante la vigencia de un decreto de huelga, que se relacionaban a casos de clientes asumidos previo a dicho decreto huelgario. Todos los querellados fueron notificados con suficiente antelación de las vistas señaladas a las cuales no comparecieron por encontrarse participando en la referida huelga.

**A.    Queja contra el Lcdo. Pedro A. Roldós Matos**

Para el día 31 de agosto de 2001, se había señalado una vista para dictar Sentencia en el caso de <u>Pueblo v. Delgado Pérez</u>, Crim. Núm. ELE2001G0040, ante el Tribunal de Primera Instancia, Sala Superior de Caguas. El abogado del acusado en el referido caso, Lcdo. Pedro A. Roldós Matos, no compareció por estar participando en una huelga decretada por la unión de los abogados de la Sociedad para Asistencia Legal. A esta vista asistieron el Ministerio

Público y el acusado, quien se encontraba detenido. En esa ocasión, el Tribunal de Primera Instancia dictó una orden contra el licenciado Roldós Matos para que mostrara causa por la cual no se debía referir el caso a este Tribunal por violación a los cánones de ética profesional al éste incomparecer a dicha vista sin presentar moción previa al respecto.

Así las cosas, la vista para dictar Sentencia fue pautada nuevamente para el 21 de agosto de 2001. Ese día, el acusado compareció otra vez sin su representación legal y el foro de instancia hizo constar en la minuta que a pesar de estar todo listo para dictar Sentencia no pudo hacerlo debido a la incomparecencia del abogado de defensa. De la minuta surge que el licenciado Roldós Matos no justificó su incomparecencia mediante moción previa. Por lo tanto, el tribunal ordenó que se notificara la minuta al Tribunal Supremo para el procedimiento disciplinario correspondiente.

**B.   Queja contra el Lcdo. Arcelio Maldonado Avilés**

Para el 18 de septiembre de 2001, se pautó la celebración de una vista de supresión de evidencia en el Tribunal de Primera Instancia, Sala Superior de Fajardo, en el caso Crim. Núm. NSCR200100107, <u>Pueblo v. Acevedo Pastrana</u>. De la minuta surge que a este señalamiento comparecieron el Ministerio Público y el acusado sin su representante legal, el Lcdo. Arcelio Maldonado Avilés. A preguntas del foro de instancia, el acusado expresó su

interés en que fuera el licenciado Maldonado Avilés quien lo continúe representando.

En la minuta de este mismo día, se hizo constar que era la tercera vez que el licenciado Maldonado Avilés no comparecía a señalamientos de vista. En dos (2) de dichas ocasiones alegó como justificación que estaba en huelga. No obstante, en esta última ocasión el licenciado Maldonado Avilés no había comparecido ni presentó excusa alguna, por lo que el tribunal de instancia ordenó que se elevara la minuta de los procedimientos al Tribunal Supremo. El tribunal, además, le ordenó al abogado que mostrara causa por la cual no se le debía encontrar incurso en desacato y sujeto a otras sanciones. Por último, se hizo constar que la suspensión era imputable a la defensa del acusado. La vista quedó pautada para el 23 de octubre de 2001.

### C. Queja contra la Lcda. Lillianette Cortés Soto

El caso Crim. Núm. JPD2000G0587, Pueblo v. Barrios Ríos, fue señalado para la vista en su fondo el día 29 de agosto de 2001 ante el Tribunal de Primera Instancia, Sala Superior de Ponce. Surge de la minuta, que ese día comparecieron el Ministerio Público y el acusado sin su representante legal, la Lcda. Lillianette Cortés Soto. Se encontraban presentes los testigos de cargo y el Director de la Oficina de la Sociedad para Asistencia Legal en Ponce, Lcdo. César Estremera Soto. A preguntas del Juez de instancia, el licenciado Estremera Soto expresó que tenía instrucciones de no intervenir en ningún caso asignado a

los abogados unionados de la Sociedad porque dicha responsabilidad es personal de cada abogado.

El Juez de instancia también explicó en la minuta que la licenciada Cortés Soto no presentó moción para notificar el motivo de su incomparecencia. En vista de ello, el Tribunal de Primera Instancia le ordenó a la licenciada Cortés Soto que mostrara causa por la cual no debía ser sancionada. Asimismo, se hizo constar que la prueba de cargo estaba completa por lo que se menoscabó el derecho del acusado a un juicio rápido, máxime cuando éste se encontraba sumariado. El tribunal hizo constar que dichos términos fueron renunciados por la defensa ante la incomparecencia de la abogada. Finalmente, el tribunal de instancia refirió el caso al Tribunal Supremo y pautó la vista en su fondo para el 28 de septiembre de 2001.

**D. Queja contra el Lcdo. Edgardo Luis Lloréns Valedón**

La conferencia con antelación al juicio en el caso Crim. Núm. JPD2001G0108, Pueblo v. Figueroa Rivera, estaba señalada para el 29 de agosto de 2001 ante el Tribunal de Primera Instancia, Sala Superior de Ponce. Surge de la minuta de los procedimientos, que ese día comparecieron el Ministerio Público y el acusado sin su representante legal, el Lcdo. Edgardo Luis Lloréns Valedón. Se encontraba también presente el Director de la Oficina de la Sociedad para Asistencia Legal en Ponce, Lcdo. César Estremera Soto, quien le expresó al tribunal que tenía instrucciones de no

intervenir en ningún caso asignado a los abogados unionados de la Sociedad porque dicha responsabilidad corresponde personalmente a cada abogado.

El foro de instancia señaló que el licenciado Lloréns Valedón no presentó moción para justificar su incomparecencia. Por lo tanto, expidió una orden de mostrar causa contra el referido abogado para que explicara por qué no debía ser sancionado. Se expresó, además, que la prueba del Ministerio Público estaba completa, por lo que se afectaron los términos de juicio rápido del acusado. Consiguientemente, el tribunal refirió la conducta del licenciado Lloréns Valedón al Tribunal Supremo. La conferencia con antelación al juicio fue transferida para el 2 de octubre de 2001.

Luego de considerar los expedientes referidos por el Tribunal de Primera Instancia en los casos reseñados anteriormente, le ordenamos al Procurador General que realizara la investigación y el Informe correspondiente. En cumplimiento con dicho requerimiento, el Procurador General notificó las quejas a los abogados y solicitó sus respectivas contestaciones. Además, ante la solicitud del Procurador General, y para fines decisorios consolidamos estas quejas.

Los licenciados Roldós Matos y Maldonado Avilés y la licenciada Cortés Soto contestaron la queja en conjunto. Explicaron que la Unión Independiente de Abogados de la Sociedad para Asistencia Legal decretó una huelga efectiva

el 16 de agosto de 2001 que se extendió hasta el 26 de septiembre de 2001 y que, al ser ellos miembros activos del sindicato, estaban obligados a cumplir con el paro huelgario decretado. Alegaron que procedía desestimar las quejas en su contra porque en estos casos no debía aplicar el Código de Ética Profesional ya que el campo estaba ocupado por la Ley Nacional de Relaciones del Trabajo —National Labor Relations Act—, 29 U.S.C. secs. 151 *et seq*. En específico, alegaron que el procedimiento disciplinario contra los abogados querellados interfiere con la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo conferida por dicho estatuto federal, lo cual es contrario a la doctrina de campo ocupado. Por último, aclararon que la conducta de los abogados no tuvo la intención de faltarle el respeto al Tribunal, sino que respondió a un deber moral de apoyo mutuo en "la lucha por la supervivencia y por mejores condiciones de vida y salario de los abogados y abogadas [sindicados] de la [Sociedad para Asistencia Legal]".

Por su parte, el licenciado Lloréns Valedón contestó la queja en su contra individualmente y solicitó unirse a los planteamientos de derecho que presentaron los demás querellados. Además, alegó que ejerció su derecho a huelga con el convencimiento que ello no conllevaría sanción disciplinaria alguna, y que a esos efectos la unión contrató un asesor legal para orientar a la matrícula. A lo anterior, el licenciado Lloréns Valedón añadió el hecho

de que no existe --o no encontró-- evidencia de procedimientos disciplinarios en contra de otros abogados de la Sociedad para Asistencia Legal en huelgas anteriores.

Visto lo anterior, el Procurador General rindió un Informe de las quejas consolidadas, en el que concluyó que los abogados querellados violaron los Cánones 9, 12 y 18 del Código de Ética Profesional. 4 L.P.R.A. Ap. IX, P. II. Veamos.

## II

Conforme al Criterio General de la Parte II del Código de Ética Profesional de los abogados sobre los deberes de éste para con los tribunales, el buen funcionamiento del proceso judicial "es responsabilidad ineludible de todo miembro de la profesión legal". Por lo tanto, es deber de todo abogado procurar un ambiente de decoro y solemnidad en los tribunales con el fin de mejorar la calidad de la justicia que en éstos se imparte. *Id*. Más específicamente, esta parte del Código de Ética Profesional le impone al abogado el deber de comportarse para con los tribunales con el "mayor respeto". Canon 9 del Código de Ética Profesional, *supra*. Este Canon 9 incluye el deber de atender pronta y diligentemente las órdenes del tribunal con respecto a la tramitación de las causas del cliente y a la comparecencia a los señalamientos de los procesos judiciales. In re Soto Colón, res. el 9 de noviembre de 2001, 2001 TSPR 166; In re Díaz Grau, res. el 1ro de mayo de 2001, 2001 TSPR 70.

Aunque el deber de respeto para con los tribunales que recoge el Canon 9 lo hemos utilizado mayormente para sancionar la inatención de los abogados a requerimientos de este Tribunal dentro de procedimientos disciplinarios,[1] de igual forma, este postulado ético incluye indubitadamente el deber de todo profesional del derecho de atender con igual diligencia y seriedad las órdenes del Tribunal de Primera Instancia y del Tribunal de Apelaciones. In re Soto Colón, *supra*; In re Díaz Grau, *supra*. Reiteradamente hemos señalado que "la desatención a las órdenes emitidas por los tribunales de justicia constituye un grave insulto a la autoridad de éstos, en directa violación al deber de la conducta exigida por el referido Canon [9]". In re Quevedo Cordero, res. el 21 de enero de 1999, 99 TSPR 4; *además*, In re Fernández Otero, 145 D.P.R. 582 (1998); In re Grau Díaz, *supra*.

Relacionado a este deber de respeto hacia la autoridad judicial, la Parte II del Código de Ética Profesional también expone la obligación de la clase togada de tramitar las causas del cliente de manera puntual y concisa. Canon 12 del Código de Ética Profesional, *supra*. En cumplimiento con dicha obligación, el canon 12 requiere que el abogado despliegue:

> [T]odas las diligencias necesarias para asegurar
> que no se causen indebidas dilaciones en [la]

---

[1] In re Otero Fernández, 145 D.P.R. 582 (1998) *y casos allí citados*; In re Claudio Ortiz, 141 D.P.R. 937 (1996); In re Colón Torres, 129 D.P.R. 490 (1991); In re Díaz García, 104 D.P.R. 171 (1975).

tramitación y solución [de los casos bajo su responsabilidad]. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente. *Id*

El deber de puntualidad y concisión en la tramitación de los casos y en el cumplimiento con los señalamientos judiciales y la obligación de no solicitar suspensión de los procedimientos, a menos que existan razones poderosas y ello sea indispensable para la protección de los derechos sustanciales del cliente, es debido tanto al tribunal como a los compañeros abogados y, por supuesto, al cliente mismo. *Id.*; *además*, In re Ayala Torres, res. el 14 de febrero de 2000, 2000 TSPR 44. Ésta es una responsabilidad ética que existe en todas las etapas del litigio e incluye el deber de acatar las órdenes del tribunal. In re Soto Colón, *supra*; In re Grau Díaz, *supra*.

A esos efectos hemos expresado que:

En la tramitación de un pleito, el abogado debe a las cortes el respeto a las órdenes judiciales que le son dirigidas, exigiéndose de él la asistencia puntual y el despliegue de todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en la tramitación y solución de los casos. *Citando a* Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787 (1974).

Por otra parte, el Canon 18 del Código de Ética Profesional dispone que el abogado debe desempeñar la profesión cabal y diligentemente. Al asumir la representación del cliente debe prepararse adecuadamente y evitar imponer "gastos y demoras irrazonables al cliente y a la administración de la justicia". *Id*. El abogado debe

acceder a representar a un cliente solamente "cuando está consciente de que puede rendir una labor idónea competente y que puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". *Id*. Asimismo, dispone el Canon 18 que:

> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Este deber de competencia que consagra el Canon 18 es infringido cuando un abogado, por ejemplo, no comparece a vistas señaladas por el tribunal ni presenta excusa justificada al respecto. In re Soto Colón, *supra*. Precisamente en In re Soto Colón, *supra*, reiteramos que:

> [M]ás allá de las razones que inducen a un abogado a aceptar un caso, **una vez asume la representación legal de un cliente, tiene ante su cliente y ante el tribunal "la responsabilidad indelegable de llevar a cabo esa gestión profesional con el más alto grado de diligencia y competencia posible"**. *Citando a* In re Silverio Orta, 117 D.P.R. 14, 19 (1986).

Es evidente la relación del deber de competencia que impone el Canon 18 con el deber de puntualidad y concisión en la tramitación de los casos y el deber de respeto hacia el tribunal provistos en los Cánones 12 y 9 del Código Ética Profesional, respectivamente. Un abogado competente definitivamente atiende las causas del cliente de manera pronta y efectiva y observa cabalmente los señalamientos judiciales para evitar dilaciones indebidas en

consideración al tribunal, los compañeros abogados e intereses del cliente.

Asimismo, el cumplimiento y la observación estricta de los deberes éticos que conlleva la práctica de la profesión de la abogacía, cuyos mínimos están consagrados en el Código de Ética Profesional, *supra*, no está condicionada al hecho de que el abogado reciba retribuciones mínimas, o no reciba retribución alguna. In re Pereira Esteves, 131 D.P.R. 515 (1992). La insuficiencia de retribución económica, por ejemplo, no justifica la falta de diligencia en la tramitación de un caso previamente asumido por el abogado. *Id*.

A la luz de la discusión anterior, veamos la controversia ante nos. Debemos determinar si los abogados de la Sociedad para Asistencia Legal aquí querellados incumplieron con sus deberes éticos al no comparecer a señalamientos judiciales por estar participando en una huelga obrero patronal.

III

A

En el presente caso, los abogados querellados no comparecieron a las vistas pautadas en casos criminales por encontrase participando en una huelga obrero patronal, lo que conllevó demoras indebidas en la resolución de los casos en contra de sus clientes por aproximadamente treinta (30) días. En el contexto criminal, el incumplimiento de los señalamientos del tribunal, además de no responder al

respeto debido a la autoridad judicial, agrava la situación del acusado por existir términos estatutarios que inciden sobre el derecho constitucional a un juicio rápido. Máxime cuando el cliente está sumariado, como ocurrió con el representado por la licenciada Cortés Soto, o cuando, por lo menos, existe sobre la persona el estigma y preocupación de una acusación criminal, como en el caso de los clientes de los licenciados Maldonado Avilés y Lloréns Valedón.

A pesar de que reconocemos la legitimidad del reclamo laboral de los abogados querellados, éstos debieron atender diligentemente los señalamientos judiciales relacionados a casos que fueron asumidos previo al decreto de huelga. Una vez un abogado asume la responsabilidad de defender los intereses del cliente, éste debe proceder con toda diligencia y competencia aunque ello conlleve sacrificios personales. El abogado no queda relevado de sus obligaciones profesionales con sus clientes a menos que medie la aceptación de su renuncia por el tribunal. La existencia de una huelga obrero patronal no es una excepción a esta norma. El desatender los señalamientos del tribunal por causa de una huelga obrero patronal causa dilaciones indebidas de los procedimientos judiciales y menoscaba la autoridad judicial y el respeto debido a los tribunales. Todo ello, en consecuencia, tiene un efecto adverso sobre los intereses del cliente y la administración de la justicia en general

En el caso de <u>Pueblo v. Correa Cartagena</u>, 130 D.P.R. 350 (1992), señalamos mediante una Sentencia publicada que la huelga obrero patronal en la que participaba un abogado de la Sociedad para Asistencia Legal no era justa causa para no comparecer a las vistas señaladas por el tribunal. Apercibimos a dicho abogado, además, que el no comparecer a los señalamientos, conforme se lo ordenamos, "sin otra causa que no sea su participación en la huelga decretada [...], podrá constituir sendas violaciones a los Cánones 12 y 18 del Código de Ética Profesional". En esa ocasión, de igual forma, advertimos a todos los abogados unionados de la Sociedad para Asistencia Legal que:

> [S]u derecho reconocido a la huelga y la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo no puede interferir con las obligaciones profesionales asumidas por dichos abogados con sus representados individuales con anterioridad a la fecha del comienzo de la huelga, y mucho menos interferir con la jurisdicción de este Tribunal para regular la profesión de abogado y hacer cumplir las obligaciones impuestas a éstos por el Código de Ética que rige la práctica de la abogacía. <u>Pueblo v. Correa Cartagena</u>, *supra*.

En el presente caso, independientemente de las razones que tuvieran los querellados para no comparecer a las vistas, al menos debieron así notificarlo con antelación al tribunal de instancia y acatar la resolución de dicha notificación por el tribunal.

De otra parte, a los querellados no les asiste la razón en cuanto a su alegación de que nuestro poder inherente para regular la profesión de la abogacía

interferiría en este caso con la Ley Nacional de Relaciones del Trabajo, *supra*. Dicho argumento no es convincente pues se fundamenta en una teoría muy frágil sobre el efecto que tiene la disputa laboral entre los abogados y la Sociedad para Asistencia Legal sobre el comercio interestatal, requisito indispensable para que la Junta Nacional de Relaciones del trabajo posea jurisdicción conforme a dicha legislación. *Véase*, N.L.R.B. v. Jones & Laughlin Steel Corp., 57 S.Ct. 615 (1937).

Aún así, debemos aclarar que la Junta Nacional de Relaciones del Trabajo --entidad encargada de implementar de manera exclusiva la Ley Nacional de Relaciones del Trabajo, *supra*-- no tiene jurisdicción en casos como éstos pues no estamos pasando juicio sobre una de las prácticas ilícitas expresamente enumeradas en la ley en cuestión o sobre las actividades concertadas que dicha ley protege expresamente San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1958); *además*, Demetrio Fernández y Celina Romany, *Derecho Laboral: Casos y Materiales*, Ed. de la U.P.R., Tomo I, 1987, págs. 53 *et seq*. Tampoco el Código de Ética Profesional o el ejercicio de nuestro poder inherente para regular la profesión de la abogacía en este caso incidiría sobre actividad alguna que esté argüiblemente prohibida o protegida por la referida ley. San Diego Building Trades Council v. Garmon, *supra*; Sears v. San Diego City, 436 U.S. 180 (1978); Vargas v. Molinos Nacionales, Inc., 134 D.P.R. 919 (1993).

No puede decirse que el Código de Ética Profesional de Puerto Rico limita o reglamenta de alguna forma los derechos de negociación colectiva de los abogados unionados. El Código de Ética Profesional de los abogados de ninguna manera regula las relaciones entre los abogados y sus patronos. Sin embargo, aunque los abogados de entidades como la Sociedad de Asistencia Legal puedan sindicarse, ello de ninguna manera puede interferir con sus deberes éticos hacia los clientes, el tribunal y los demás compañeros de la profesión.[2]

"[L]a práctica de la abogacía, distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo". Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 613 (1993). Los abogados son funcionarios del Tribunal y "ministros ordenados de la justicia". Id., a la pág. 613-614. Éstos escogen la práctica del derecho con pleno conocimiento de sus obligaciones y juramentan cumplir con los postulados éticos que su práctica implica. Por consiguiente, después de asumir la encomienda de un cliente los abogados no pueden descuidar los deberes y obligaciones que juraron observar, aún cuando ello conlleve sacrificios

---

[2] Esto es similar al caso en que el obrero infringe alguna ley estatal de naturaleza criminal. En esas circunstancias, el Estado puede reglamentar y penalizar dicha conducta porque se trata de un asunto no expresamente o argüiblemente protegido o prohibido por la Ley Nacional de Relaciones del Trabajo, supra, por lo que la Junta Nacional de Relaciones del Trabajo no posee jurisdicción. Sears v. San Diego City, supra.

personales. <u>Ramos Acevedo v. Tribunal Superior</u>, *supra*. <u>Nótese que no estamos sancionando el acto de la huelga del abogado. Lo que no podemos tolerar es que las obligaciones asumidas con el cliente y el cumplimiento con las órdenes del tribunal sean desatendidas *so* pretexto de dicho derecho.</u>

Por lo tanto, reiteramos que el derecho a huelga no excusa de ninguna manera el incumplimiento con los deberes éticos profesionales del abogado ni puede, por ello, ponerse en riesgo la libertad de una persona y la pronta solución de su caso. Tampoco es justa causa para incumplir con los señalamientos de vista del tribunal.

B

Por último, es preciso señalar que no estamos evaluando el derecho de los abogados de la Sociedad para Asistencia Legal de llevar a cabo actividades concertadas de apoyo mutuo como parte de su estrategia para mejorar sus condiciones de trabajo. Reconocemos la labor encomiable que realizan estos abogados a pesar de la denunciada insuficiencia de recursos económicos de dicha entidad y respetamos los esfuerzos que se realicen encaminados a mejorar esta situación. Hay que recordar que en esta jurisdicción los abogados y abogadas de la Sociedad para Asistencia Legal son los que, de ordinario, cargan con la responsabilidad y labor de representar judicialmente a las personas de escasos recursos económicos acusadas de delitos. <u>Ramos Acevedo v. Tribunal Superior</u>, *supra*. Se

estima que del 70-80 % de los acusados de delitos graves son defendidos por la Sociedad para Asistencia Legal. *Visión en Ruta al Futuro, Informe de la Comisión Futurista de los Tribunales*, Tribunal Supremo de Puerto Rico, Volumen II, 2000, pág. 44.

Según el Informe de la Comisión Futurista de los Tribunales del Tribunal Supremo, esta sobrecarga de casos de la Sociedad para Asistencia Legal, unida a la falta de recursos, incide sobre el derecho constitucional de todo acusado de delito a una representación legal adecuada. *Id*. Huelga, por lo tanto, abundar en la urgencia de un remedio al grave problema recurrente de la representación legal gratuita en nuestra jurisdicción.[3] El aclamado derecho de acceso a la justicia que reconoció el Legislador al aprobar la nueva Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003, tiene que complementarse con medidas que provean los recursos adecuados para las entidades que en la práctica hacen verdaderamente posible dicho derecho, como lo es la Sociedad para Asistencia Legal. Aprovechamos la oportunidad para hacer un llamado a la Rama Legislativa a esos efectos.

---

[3] Este Tribunal ha tomado medidas en varias ocasiones para evitar en lo posible que se perjudiquen los derechos e intereses de los acusados en situaciones como la presente. *Véase*, In Re: Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, res. el 1ro de marzo de 2004, 2004 TSPR 30; In Re: Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, res. el 31 de agosto de 2001, 2001 TSPR 122.

IV

Por los fundamentos que anteceden, y a tenor con nuestro poder inherente para reglamentar la profesión de la abogacía, concluimos que los querellados Lillianette Cortés Soto, Edgardo Luis Lloréns Valedón, Arcelio Maldonado Avilés y Pedro A. Roldós Matos violaron los Cánones 9, 12 y 18 del Código de Ética Profesional. En vista de la falta de intención de perjudicar al cliente y de menospreciar las órdenes del tribunal y de la ausencia de señalamientos disciplinarios previos, y en consideración a las circunstancias laborales hasta ahora presentes en la Sociedad para Asistencia Legal, limitamos la sanción a una censura enérgica.

Se le advierte a los abogados de la Sociedad para Asistencia Legal que en futuras ocasiones impondremos sanciones más severas en estos casos.

Se dictará Sentencia de conformidad.

AB-2001-211
Cons. AB-2001-232
AB-2001-217                                                    21

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Pedro A. Roldós Matos
Arcelio Maldonado Avilés              AB-2001-211
Lillianette Cortés Soto        Cons.  AB-2001-232
Edgardo Luis Lloréns Valedón          AB-2001-217

SENTENCIA

En San Juan, Puerto Rico, 17 de marzo de 2004.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integral de la presente, se dicta Sentencia en la que se censura enérgicamente a la licenciada Lillianette Cortés Soto y a los licenciados Edgardo Luis Lloréns Valedón, Arcelio Maldonado Avilés y Pedro A. Roldós Matos.  Se les advierte que en futuras ocasiones impondremos sanciones más severas en estos casos.

Notifíquese por teléfono y por la vía ordinaria.

Publíquese.

Así lo pronunció y manda el Tribunal y certifica al Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo Lopez no intervino.  El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo