per curiam:
En esta ocasión, nos corresponde ejercer nuestra jurisdicción disciplinaria para evaluar la conducta del Ledo. Rafael Capella Angueira. Específicamente, debemos determinar si las acciones que éste tomó en calidad de Director de la Sociedad para la Asistencia Legal (SAL) de la Oficina de Arecibo violaron los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 LPRA Ap. IX, y, de ser así, las medidas disciplinarias que proceden.
I
El Ledo. Rafael Capella Angueira fue admitido al ejercicio de la abogacía el 30 de noviembre de 1982 y al ejercicio de la notaría el 3 de agosto de 1983. El 13 de enero de 2015, el honorable juez Nelson Canabal Pérez, juez administrador de la Región Judicial de Arecibo, presentó una Petición Urgente al Honorable Tribunal Supremo. En ésta, el Juez *612 Canabal Pérez nos refirió una situación preocupante que se había desarrollado en el Salón de Sesiones 204 de la mencionada región judicial, presuntamente producto de una serie de actuaciones del licenciado Capella Angueira, director de la Oficina de la SAL en Arecibo. La presentación de la Petición Urgente fue, a su vez, precedida y motivada por una resolución emitida el 31 de diciembre de 2014 por la honorable juez Isabel Lugo Báez —quien entonces presidía el Salón de Sesiones 204— en Pueblo de Puerto Rico v. Adalberto Quiles Negrón, Pueblo de Puerto Rico v. Claudia E. Hernández Cohen y Pueblo de Puerto Rico v. Freddie L. Menéndez Rivera, VP2014-2688 al 2693, AR2014CR01248 y AR2014CR01264-1, respectivamente, mediante la cual solicitó la intervención de este Tribunal.(1)
En síntesis, el juez Canabal Pérez señaló en su Petición Urgente ante este Tribunal que el 3 de diciembre de 2014 el licenciado Capella Angueira, en calidad de Director de la oficina de la SAL de Arecibo, emitió una directriz administrativa a su personal a los efectos de que, hasta nuevo aviso, no aceptarían representar clientes cuyos casos fuesen asignados al salón de sesiones presidido por la juez Lugo Báez.(2) Según el juez Canabal Pérez, estas instrucciones constituían un ataque colateral a su decisión de denegar, mediante resolución emitida el 24 de noviembre de 2014, una segunda solicitud de inhibición presentada por el licenciado Capella Angueira en contra de la juez Lugo Báez en Pueblo de Puerto Rico v. José Cuadro Morales, *613 VPA2014-0227.(3) El licenciado Capella Angueira fundamentó su solicitud de inhibición en ese caso en el hecho de que había presentado una queja en contra de la juez Lugo Báez ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (Asuntos Legales de la OAT).(4) En la solicitud de inhibición, el licenciado Capella Angueira adujo que, estando pendiente dicha queja, la juez Lugo Báez se debía inhibir de todos los casos en que mediara representación legal de la SAL.
Luego de declarar la solicitud “no ha lugar”, el juez Canabal Pérez recibió una carta del licenciado Capella Angueira el 3 de diciembre de 2014.(5) En ésta, el licenciado le informó de la directriz que emitió ese día y las razones que lo llevaron a tomar ese curso de acción.(6)
Como consecuencia de la directriz del licenciado Capella Angueira, tres imputados, para quienes la SAL había realizado la correspondiente determinación de indigencia, no recibieron representación legal por parte de ésta.(7) Esto, *614 porque sus casos fueron asignados al salón de sesiones presidido por la juez Lugo Báez. Para estos casos, el licenciado Capella Angueira presentó mociones informativas en las cuales indicó que los imputados habían sido entrevistados y certificados como indigentes. No obstante, informó que la SAL no asumiría su representación legal. Esto, sin hacer constar las razones detrás de tal denegatoria.(8) La juez Lugo Báez, por su parte, ordenó al licenciado Capella Angueira exponer las razones por las cuales la SAL no asumiría la representación legal de los imputados indigentes.(9) El licenciado Capella Angueira, en una Moción en Cumplimiento de Orden, explicó “que las mismas fueron notificadas previamente en la comunicación del 3 de diciembre de 2014 [...]”.(10)
Además, según inicialmente alegó la juez Lugo Báez y posteriormente corroboró la Oficina de la Procuradora General, durante otro ciclo de conferencias en preparación para vistas preliminares, la alguacil Johanna Piñero Sánchez, Supervisora de la Unidad de Confinados del Centro Judicial de Arecibo, escuchó al licenciado Capella Angueira recomendarle a otros imputados, cuyos casos habían sido asignados al salón de sesiones presidido por la juez Lugo Báez, que solicitaran que un juez distinto atendiera sus *615 casos o que requirieran que se les nombrara un abogado de oficio.(11)
Conforme a los hechos reseñados, en su Petición Urgente, el juez Canabal Pérez nos solicitó que ordenáramos al licenciado Capella Angueira: (1) cesar y desistir de no aceptar casos de personas indigentes asignados al Salón de Sesiones 204; (2) atenerse a lo dispuesto en su Resolución de 24 de noviembre de 2014 o que, en la alternativa, procediera con el remedio judicial adecuado; (3) atenerse a las disposiciones pertinentes de las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, y el Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, y finalmente, (4) cumplir con los deberes éticos impuestos por los Cánones 1, 9,12 y 18 del Código de Etica Profesional, supra.
Examinada la Petición Urgente del juez Canabal Pérez, y ante la presunta evasión reiterada por parte del licenciado Capella Angueira de proveer representación legal a imputados indigentes asignados a un salón de sesiones en particular, el 20 de enero de 2015 este Tribunal emitió una resolución para ordenar a este licenciado que se expresara dentro de un término de cinco días en torno a la Petición Urgente presentada. Específicamente, ordenamos que el licenciado Capella Angueira indicara cómo su conducta no constituía una violación a los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, supra, y no contravenía las normas, los principios y los preceptos constitucionales que conforman nuestro sistema de justicia criminal. Oportunamente, el licenciado Capella Angueira compareció mediante una Moción Asumiendo Representación Legal, de Reconsideración y sobre Otros Extremos, y entre otras cosas, solicitó que dejáramos sin efecto la resolución emitida. Esto, bajo el fundamento de que la misma representaba el *616 comienzo de un proceso disciplinario por la vía sumaria. Por otra parte, el licenciado nos informó que a partir de ese día, “los abogados que laboran para la Sociedad para Asistencia Legal en la Oficina de Arecibo han estado compareciendo y continuarán compareciendo a la Sala 204 del Tribunal de Primera Instancia, Sala de Arecibo en representación de los acusados indigentes que son elegibles para recibir los servicios de esta entidad”. (Enfasis suplido).(12)
No obstante, en su comparecencia, el licenciado Capella Angueira no atendió las cuestiones sobre las cuales se le ordenó que se expresara. Así las cosas, referimos el asunto a la Oficina de la Procuradora General para que, dentro de un término de quince días, nos rindiera el informe correspondiente.(13)
El 17 de febrero de 2015, el licenciado Capella Angueira compareció nuevamente mediante Contestación a “Petición Urgente al Honorable Tribunal Supremo”. En ésta, expuso su posición con respecto a las alegaciones hechas en su contra. Es decir, dio cumplimiento, si bien tardíamente, a lo previamente ordenado. En su Contestación, el letrado no negó la conducta que el juez Canabal Pérez y la juez Lugo Báez le imputaron. En vez, explicó que su proceder estuvo en todo momento motivado por su interés en garantizar los derechos de los clientes indigentes representados por la SAL, a quienes, además, ha dedicado más de treinta años de labor profesional. Rechazó, pues, que sus acciones hayan formado parte de una maniobra para lograr por vía de coacción lo que no pudo a través del trámite judicial —es decir, la inhibición de un juez—, y negó que su intención haya sido atacar colateralmente una determinación judicial o menospreciar la autoridad del tribunal.
*617 El 24 de febrero de 2015, la Procuradora General presentó su Informe. En éste concluyó que el letrado incurrió en una conducta violatoria de los Cánones 1, 9, 12 y 18 del Código de Etica Profesional, supra.
Evaluado el Informe de la Procuradora General y la Contestación presentada previamente por el licenciado Capella Angueira, el 27 de febrero de 2015 emitimos una resolución para conceder a este último cinco días para que se expresara sobre las determinaciones y conclusiones presentadas por la Procuradora General. Oportunamente, el licenciado Capella Angueira presentó una Réplica al Informe de la Procuradora General y en Cumplimiento de Orden. Asimismo, la SAL y el juez Canabal Pérez presentaron comparecencias especiales el 9 y 26 de marzo y el 17 de marzo de 2015, respectivamente.(14)
Contando con el beneficio del Informe de la Oficina de la Procuradora General y con la comparecencia de todas las partes concernidas, procedemos a evaluar las presuntas violaciones a los Cánones 1, 9, 12 y 18 del Código de Etica Profesional, supra, por parte del licenciado Capella Angueira.
II
 El Canon 1 del Código de Etica Profesional impone a todo abogado y abogada el deber de luchar a favor de que toda persona tenga acceso a una representación legal que sea “capacitada, íntegra y diligente [...]”. 4 LPRA Ap. IX. Dispone el canon que, en la consecución de este objetivo, los profesionales del Derecho se deben esforzar por proveer servicios legales gratuitos a personas indigentes, “especialmente en lo que se refiere a la defensa de acusados y a la representación legal de personas insolventes”. íd. En el ám *618 bito penal, este llamado adquiere mayor importancia. Ello, sin duda, en atención a los intereses implicados y las posibles consecuencias a las que está sujeto un imputado de delito una vez el Estado inicia un procedimiento criminal en su contra.
El Canon 1, además, está íntimamente relacionado con preceptos constitucionales y estatutarios de máxima envergadura en nuestro sistema de justicia. Particularmente, la obligación de aceptar casos de personas indigentes acusadas de delitos que encarna el Canon 1 responde a la garantía del derecho a asistencia de abogado en todos los procesos criminales dispuesta en la Sección 11 de la Carta de Derechos de nuestra Constitución. Véase Art. II, Sec. 11, Const. ELA, LPRA, Tomo l.(15) Asimismo, distintos preceptos estatutarios hacen viable el cumplimiento con este mandato constitucional.(16) Además, lo resuelto por este Tribunal en Ramos Acevedo v. Tribunal Superior, 133 DPR 599 (1993), y la posterior adopción del Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, representaron pasos firmes en dirección a garantizar el acceso a representación legal para personas indigentes.(17)
Precisamente, en atención a este andamiaje constitucional y legislativo, este Tribunal ha afirmado que “[1] a obligación de los abogados de brindar representación legal gratuita a las personas de escasos recursos, en la esfera *619 penal, surge de la Constitución del Estado. Libre Asociado y, en términos más específicos, de las Reglas de Procedimiento Criminal y del Canon 1 [...]”. In re Rodríguez Santiago, 157 DPR 26, 30 (2002). De la misma manera, hemos señalado que esta obligación es un corolario de la naturaleza y función eminentemente pública de la profesión legal, y se deriva del hecho de que todo abogado y abogada es un oficial del tribunal. íd., pág. 31. Constituye, pues, conducta no sólo reprochable, sino además sancionable, el que un letrado o letrada se niegue a ofrecer sus servicios profesionales a una persona indigente a quien se le encausa criminalmente, sin aducir una razón legítima que pueda anteponerse ante el interés apremiante de garantizarle su derecho constitucional a contar con representación legal, íd., pág. 36. Véase, además, In re Roldós Matos, 161 DPR 373 (2004).
En este sentido, no se puede olvidar que, además de tener la responsabilidad de defender honesta y competentemente los intereses de su cliente, los abogados y abogadas desempeñan una función social a través de su aportación imprescindible a la materialización de la Justicia. In re Marini Román, 165 DPR 801, 807 (2005). Al desempeñar esta función, todo profesional de Derecho tiene, pues, el deber de conformar su conducta a aquellos principios dirigidos a asegurar el justo y buen funcionamiento de nuestro sistema de Justicia.
Conforme a lo anterior, el Canon 9 del Código de Etica Profesional, supra, obliga a todo abogado y abogada a “observar para con los tribunales una conducta que se caracterice por el mayor respeto”. En numerosas ocasiones hemos señalado que esta norma exige que los profesionales del Derecho sean diligentes en el trámite de los casos de sus clientes y, particularmente, en lo que respecta a obedecer y responder prontamente las órdenes emitidas por los tribunales. In re Hoffman Mouriño, 170 DPR 968 (2007). Desatender esas órdenes representa un grave menosprecio *620 a la autoridad del tribunal y constituye, por lo tanto, una clara violación al Canon 9. Por otro lado, el canon también requiere que cuando profesionales del Derecho se dirijan al tribunal o a uno de sus funcionarios lo hagan con respeto y deferencia. Véase In re Crespo Enríquez, 147 DPR 656, 662-663 (1999).
En resumen, podemos colegir que el deber de respeto que surge del Canon 9 tiene dos vertientes. La primera implica el deber de respetar las órdenes y directrices emitidas por los tribunales, las cuales, a su vez, solamente pueden ser impugnadas por medio de los cauces apelativos apropiados. S. Steidel Figueroa, Etica y responsabilidad disciplinaria del abogado, San Juan, Pubs. JTS, 2010, pág. 312. La segunda enuncia el deber de los abogados y abogadas de respetar a “jueces, empleados y funcionarios del tribunal, tanto en comparecencias formales, personales o por escrito, como cuando interactúa[n] informalmente con éstos [...]”. Id. Si bien este Tribunal ha reconocido la crítica judicial sana y oportuna como “ ‘un medio necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones’ ” —In re Crespo Enríquez, supra, pág. 663—, claramente ello no significa que los profesionales del Derecho “ ‘tiene [n] licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces’ ”. In re Rochet Santoro, 174 DPR 123, 131 (2008) (citando a In re López de Victoria I, 163 DPR 1, 8 (2004)). En cuanto a la primera vertiente del Canon 9, he-mos enfatizado lo siguiente:
Ante determinaciones adversas, los abogados poseen las herramientas que el propio ordenamiento les provee para que éstas puedan ser revisadas. Como bien dijimos en Pueblo v. Susoni, 81 DPR 124, 154 (1959), “[e]l comportamiento judicial que de alguna manera afecta los derechos de un acusado o litigante, puede llevarse al récord para la acción correctiva que proceda por un tribunal superior a tenor con lo que deba ser un juicio imparcial y justo”. In re Crespo Enríquez, supra, pág. 663.
*621 En otras palabras, nuestro ordenamiento provee los remedios adecuados para aquellas situaciones en las que un abogado o abogada entienda que los intereses de su cliente, o los suyos, han sido perjudicados. En atención a la autoridad que poseen los tribunales de justicia y a la deferencia y respeto que merecen, es a esos remedios a los que los profesionales del Derecho están obligados a recurrir para vindicar sus reclamos.
Con relación al deber de respeto para con los tribunales, el Canon 12 de Ética Profesional, supra, complementa lo dispuesto en el Canon 9 al establecer que
[e]s deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. (Énfasis suplido).
Este deber de puntualidad y diligencia aplica en todas las etapas de un litigio y, en la práctica, exige que los abogados y abogadas adopten toda medida a su alcance para evitar que se entorpezca y dilate innecesaria e injustificadamente la tramitación de los procedimientos judiciales. Véase In re Nieves Nieves, 181 DPR 25 (2011). Esta obligación no solamente se debe al tribunal, sino también a los compañeros abogados y abogadas, y, por supuesto, al cliente mismo. In re Roldós Matos, supra, pág. 384. Al igual que surge del Canon 9, esta norma “requiere que los abogados presten atención minuciosa, sean diligentes y cumplan con las órdenes del tribunal [...]”. In re García Ortiz, 187 DPR 507, 517 (2012).
Por otra parte, el deber que todo profesional del Derecho tiene de “defender los intereses de su cliente con el compromiso de emplear ‘la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez’ ” constituye una piedra angular de nuestro sistema de *622 Justicia. In re Rivera Ramos, 178 DPR 651, 664 (2010) (citando a In re Cuevas Velázquez, 174 DPR 433, 442 (2008)). Por ello, el Canon 18 del Código de Ética Profesional, supra, establece que los abogados y abogadas están llamados a “defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable”. Ser diligente implica “reali[zar] las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de [la] controversia”. Steidel Figueroa, op. cit., pág. 179. Esencialmente, “todo abogado cuyo desempeño profesional no sea adecuado, responsable, capaz y efectivo incurrirá en una violación al Canon 18 [...]”. In re Pérez Riveiro, 180 DPR 193, 202 (2010).
III
Como anticipamos, en el presente caso, la Procuradora General determinó en su Informe que el licenciado Capella Angueira incumplió con los Cánones 1, 9, 12 y 18 de Ética Profesional, supra, al negar representación legal a indigentes imputados debido a que sus casos estaban asignados al Salón de Sesiones 204 que presidía la juez Lugo Báez, contra quien el letrado había presentado una queja ante la OAT. Luego de evaluar los hechos pertinentes, coincidimos con la apreciación de la Procuradora General.
Según señaló el propio licenciado Capella Angueira en la directriz que emitió el 3 de diciembre de 2014, la orden que originó la presente acción respondió a que, estando una queja pendiente contra la referida juez, entendía que no era propio que los abogados y abogadas de la SAL aceptaran casos asignados al salón que presidía. Anejo 11 de la Resolución de 31 de diciembre de 2014. Alegó, además, que, toda vez que “administrativamente no se ha hecho *623 nada para salvaguardar los derechos de nuestros representados”,(18) se vio obligado a tomar esa determinación. En sus comparecencias ante este Tribunal, el licenciado Capella Angueira ha reiterado que, dentro de las circunstancias, consideró la medida como necesaria para garantizar los derechos de los clientes de la SAL y que, contrario a lo alegado tanto por el juez Canabal Pérez en la Petición Urgente como por la juez Lugo Báez en la resolución que emitió el 31 de diciembre de 2014, nunca pretendió que se sustituyera a la referida juez por un magistrado que fuera de su beneplácito.
A pesar de que el licenciado Capella Angueira alega haber actuado conforme a lo que entendía eran los mejores intereses de los imputados indigentes cuya representación la SAL suele asumir, el curso de acción seguido en la defensa de esos intereses fue, a todas luces, errado y en clara contravención de los postulados que informan nuestro ordenamiento procesal criminal. Asimismo, las actuaciones del licenciado Capella Angueira transgreden los deberes éticos profesionales que recogen los Cánones 1, 9, 12 y 18. Veamos.
En primer lugar, la decisión del licenciado Capella Angueira de emitir la directriz en controversia tuvo el efecto real de negarle a un grupo de imputados indigentes su derecho constitucional y estatutario a representación legal en un procedimiento criminal iniciado en su contra. No existe controversia con respecto a que los imputados en los casos Pueblo v. Adalberto Quiles Negrón, Pueblo v. Claudia Hernández Cohen, y Pueblo v. Freddie L. Menéndez Rivera, fueron certificados por representantes de la SAL como indigentes, conforme a las disposiciones reglamentarias pertinentes. Sin embargo, debido a una determinación administrativa sin apoyo legal tomada por el licenciado Capella Angueira, éstos terminaron compareciendo a sus vistas preliminares sin la debida asistencia legal. Lo que es *624 peor, la directriz del licenciado Capella Angueira obligó a los subalternos de éste en la oficina de la SAL de Arecibo a incurrir en violaciones éticas al negarse a asumir la representación legal de indigentes cuyos casos fueran asignados a la sala de la juez Lugo Báez.
Asimismo, la directriz del licenciado Capella Angueira representó la asunción de una actitud evidentemente desafiante ante la autoridad del tribunal. Al arrogarse la facultad de determinar en qué casos la SAL asumiría representación legal y en cuáles no, todo en función del magistrado, que presidirá la vista correspondiente, el licenciado Capella Angueira obstruyó de manera directa el buen funcionamiento de nuestro sistema de justicia criminal. Ello, a su vez, generó dilaciones injustificadas en la tramitación de casos en el salón de sesiones correspondiente, ya que obligó a la juez Lugo Báez a reseñalar vistas y designar abogados de oficio en casos que, en circunstancias ordinarias, serían atendidos por el personal de la SAL. Esa actuación no solo demuestra una falta de respeto hacia el tribunal, sino también hacia los compañeros abogados y abogadas que tuvieron que asumir, innecesariamente, la representación legal de estos indigentes imputados.
El licenciado Capella Angueira agravó el panorama anterior al incumplir con el requisito de notificar las razones por las cuales la SAL no asumiría la representación legal de los imputados y luego desatender las órdenes del tribunal de cumplir con tal deber. Ciertamente, la denegatoria de una solicitud de inhibición no constituye, bajo ningún concepto, una razón legítima para negarse a comparecer ante un juez en particular y, consiguientemente, rechazar clientes para los cuales la SAL usualmente asumiría representación legal.
Además, la decisión de recomendar a los imputados entrevistados que solicitaran que otro juez atendiera sus casos o que requirieran que se les nombrara un abogado de *625 oficio, constituye una afrenta a la autoridad judicial y al buen funcionamiento de nuestros tribunales.
Por todo lo anterior, este Tribunal no puede sino expresar su más profundo repudio hacia la conducta en que incurrió el licenciado Capella Angueira y la posición en la que éste colocó, tanto a los abogados y abogadas de la SAL que laboran bajo su dirección como a los imputados afectados por sus decisiones administrativas. Este abusó de su posición de poder para, sin base jurídica alguna, emitir una directriz administrativa que tuvo el efecto nefasto de negar a un grupo de imputados indigentes su derecho constitucional y estatutario a contar con asistencia legal en un procedimiento criminal, todo ello en contravención de varios postulados básicos de nuestro ordenamiento disciplinario.
IV
Tras haber determinado que el licenciado Capella Angueira incurrió en las violaciones éticas que se le imputan, resta por fijar la sanción que procede. Sabido es que, al determinar la sanción disciplinaria que se impondrá a un abogado o abogada que ha transgredido las normas que rigen el ejercicio de la profesión del Derecho en nuestra jurisdicción, este Tribunal puede tomar en consideración la presencia de circunstancias atenuantes. En ocasiones previas, hemos identificado algunas de ellas, a saber: (1) la buena reputación del abogado o abogada en la comunidad; (2) su historial previo; (3) si se trata de su primera falta disciplinaria; (4) el perjuicio, si alguno, que hayan sufrido las partes implicadas; (5) si se trata de un incidente aislado; (6) si medió ánimo de lucro, y (7) cualquier otra consideración que este Tribunal entienda pertinente al momento de evaluar la conducta imputada. In re Hernández González, 188 DPR 721, 729 (2013).
*626 En el caso del licenciado Capella Angueira, ésta es la primera vez que determinamos que ha incurrido en conducta contraria a los cánones del Código de Etica Profesional y su expediente personal refleja que nunca ha sido objeto de una queja disciplinaria. Asimismo, su historial profesional refleja más de tres décadas de compromiso con las comunidades más vulnerables y desventajadas de nuestro País, trabajo que ha realizado con pasión y orgullo, según la misma Procuradora General también reconoce. A su vez, debemos destacar que el licenciado Capella Angueira revaluó su determinación y se retractó de la directriz que dio origen a esta controversia tan pronto fue apercibido por este Tribunal. Además, es importante notar que no medió ningún ánimo de lucro en su proceder y que, finalmente, en sus comparecencias, ha destacado que esta situación lamentosa ha sido aleccionadora para él.
De otro lado, es un hecho irrefutable que en el presente caso las partes más estrechamente implicadas —es decir, los indigentes imputados cuyos derechos a contar con representación legal fueron vulnerados— sufrieron un perjuicio sustancial como consecuencia directa de las faltas éticas del licenciado Capella Angueira. Asimismo, ya que el letrado desistió de sus pretensiones una vez fue advertido por este Tribunal, evitando así causarle aún mayores perjuicios a la comunidad a la que la SAL está llamada a servir y a nuestro sistema de justicia criminal en general, no puede tener el efecto de aminorar totalmente la gravedad de las violaciones éticas ya cometidas. No dudamos del licenciado Capella Angueira cuando asevera que el proceso de marras ha sido doloroso, difícil y aleccionador, y que en lo sucesivo habrá de ser más riguroso al momento de descargar sus funciones y responsabilidades.(19) No obstante, en el balance final, este Tribunal no puede titubear al momento de ejercer su autoridad disciplinaria con el rigor que *627 exige una controversia como ésta. Tampoco puede eludir su deber de transmitir un mensaje contundente e inequívoco a la profesión legal en cuanto a que este tipo de conducta no solamente no será permitida, sino que acarreará serias consecuencias. Así, por los fundamentos anteriormente reseñados, y en atención a la gravedad de las violaciones cometidas por el licenciado Capella Angueira en contravención a los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, supra, se suspende al licenciado Capella Angueira del ejercicio de la abogacía y la notaría por un término de tres meses contado a partir de la notificación de la presente Opinión per curiam y Sentencia.
El licenciado Capella Angueira deberá notificar a sus clientes de su inhabilidad de poder continuar representándolos y devolverá a éstos los expedientes de todo caso que ya haya atendido o que esté pendiente de resolución y, además, todos los honorarios que haya percibido por trabajos no realizados. De igual manera, deberá informar su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente. El letrado deberá acreditar y certificar el cumplimiento con todo lo anterior, dentro de un término de treinta días, contado a partir de la notificación de la presente Opinión per curiam y Sentencia. Por último, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del licenciado Capella Angueira, y entregarlos al Director de la Oficina de Inspección de Notarías para la correspondiente inspección e informe.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una Opinión concurrente en parte y disidente en parte, a la cual se unió la Jueza Asociada Oronoz Rodríguez. El Juez Asociado Señor Estrella Martínez concurrió sin opinión escrita. La Jueza Presidenta Señora Fiol Matta no intervino.

 El juez Canabal Pérez acompañó su Petición Urgente con esta resolución. En ésta, la juez Lugo Báez detalló los antecedentes fácticos y procesales que la llevaron a solicitar la intervención de este Tribunal y anejó la documentación que sustenta sus señalamientos con respecto a la alegada conducta del licenciado Capella Angueira. En lo pertinente, señaló que el licenciado Capella Angueira había denegado asumir la representación legal de los imputados indigentes en los tres casos señalados, había incumplido con disposiciones pertinentes del Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, 4 LPRA Ap. XXVIII-A, y había desatendido órdenes del tribunal, entre otras cosas.

 Es menester señalar que al momento de la presentación de la Petición Urgente, esta directriz continuaba en vigor.

 El licenciado Capella Angueira presentó la primera solicitud de inhibición el 5 de noviembre de 2014 ante la misma juez Lugo Báez. Esta la declaró “no ha lugar” el próximo día. Véanse los Anejos 1 y 2 de Resolución del 31 de diciembre de 2014.

 Es importante destacar que el contenido de la queja no incide en lo absoluto en nuestra evaluación de las actuaciones del licenciado Capella Angueira. Por lo tanto, y en deferencia al trámite investigativo ordinario mediante el cual se atenderá la referida queja, nos abstenemos de mencionar las alegaciones específicas hechas por el licenciado, las cuales serán evaluadas en su día.

 Esto a pesar de que el licenciado Capella Angueira había solicitado un término para recurrir al Tribunal de Apelaciones, lo que no hizo.

 Concretamente, el licenciado Capella Angueira informó que “[e]n vista de que administrativamente no se ha hecho nada para salvaguardar los derechos de nuestros representados y el buen funcionamiento que debe imperar en la sala de la [juez Lugo Báez,] nos vemos en el deber de tomar una determinación administrativa [y e]fectivo inmediatamente no estaremos aceptando la representación de casos o acusados que estuvieren señalados en la sala que preside la Honorable Isabel Lugo Báez”. El licenciado dirigió la carta al juez Canabal Pérez, con copia a la Hon. Heidi Kiess Rivera, Juez Coordinadora de los Asuntos de lo Criminal, y a la misma juez Lugo Báez. Véase Anejo 5 de Resolución de 31 de diciembre de 2014.

 Dada la negativa de la Sociedad para la Asistencia Legal (SAL) de asumir la representación legal de los imputados en Pueblo de Puerto Rico v. Adalberto Quiles Negrón, AR2014CR00839-6; Pueblo de Puerto Rico v. Claudia E. Hernández Cohen, AR2014CR01248, y Pueblo de Puerto Rico v. Freddie L. Menéndez Rivera, AR2014CR01264-1, éstos comparecieron a su vista preliminar sin representación legal. Así, la juez Lugo Báez se vio obligada a tomar la medida cautelar de designar *614 abogados de oficio para los tres imputados. Ello, a su vez, requirió reseñalar las vistas preliminares y generó una secuencia de complicaciones en el trámite de los correspondientes procedimientos criminales.

 Véanse los Anejos III, X y XVII del Informe de la Procuradora General.

 La Regla 13(a) del Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal dispone que “[cjuando la Sociedad para Asistencia Legal o cualquier entidad análoga similar acepten representar a una persona imputada de delito, deberán notificar el nombre al tribunal mediante moción, el día en que asuman la representación legal o a más tardar al día siguiente. Asimismo, cuando denieguen representación legal a una persona imputada que asistió a una conferencia o entrevista, deberán notificar mediante moción el nombre y las razones para la denegación, el día en que la denieguen o a más tardar al día siguiente”. (Énfasis suplido). 4 LPRA Ap. XXVIII-A. La regla provee una sola excepción al requisito de proporcionar las razones detrás de la denegación de representación legal: que existe un conflicto de intereses entre personas coacusadas de delito. En estas circunstancias, bastará con indicar la existencia del mismo. íd.

 Moción en Cumplimiento de Orden. Véase Anejo 9 de la Resolución de 31 de diciembre de 2014.

 Como parte de su investigación, la Oficina de la Procuradora General se comunicó directamente con la señora Piñero Sánchez, quien nuevamente corroboró las expresiones hechas por el licenciado Capella Angueira. Véase Informe de la Procuradora General, pág. 5.

 Moción Asumiendo Representación Legal, de Reconsideración y sobre Otros Extremos, pág. 2. El licenciado Capella Angueira acompañó su moción con copia de una misiva, de 23 de enero de 2015, mediante la cual informaba al juez Canabal Pérez de su nueva determinación, la cual sería efectiva inmediatamente.

 Además, mediante la resolución certificada el 9 de febrero de 2015, este Tribunal declaró “no ha lugar” la moción de reconsideración presentada por el licenciado Capella Angueira y “ha lugar” a su solicitud de representación legal.

 El licenciado Capella Angueira, por su parte, compareció nuevamente el 1 de abril de 2015 mediante el Escrito en Relación a Comparecencia Especial del 17 de marzo de 2015, del Hon. Nelson Canabal Pérez.

 Destacamos que la misión de la SAL es, justamente, hacer efectivo este mandato constitucional.

 Concretamente, las Reglas 57 y 159 de Procedimiento Criminal, 34LPRA Ap. II, establecen que, de un acusado comparecer sin representación legal a una vista o a un juicio, el tribunal viene obligado a informarle sobre su derecho de contar con asistencia de un abogado o abogada defensor y, de ser necesario, nombrarle uno que, en adelante, le proveerá sus servicios sin costo para él.

 En Ramos Acevedo v. Tribunal Superior, 133 DPR 599, 612 (1993), luego de reconocer que el derecho a tener representación legal en casos criminales forma parte fundamental del debido proceso de ley, expresamos que la obligación de pro-veer asistencia de abogado a los indigentes no recae exclusivamente en el Estado, sino que constituye “una obligación compartida con los abogados admitidos al ejercicio de la profesión”. (Enfasis suprimido).

 Véase Anejo 5 de Resolución de 31 de diciembre de 2014.

 Réplica al Informe de la Procuradora General y en Cumplimiento deOrden, págs. 10 y 12.