EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Adalberto Quiles Negrón<br>Claudia E. Hernández Cohen<br>Freddie L. Menéndez Rivera<br><br>Recurridos<br><br>Hon. Nelson J. Canabal Pérez<br><br>Peticionario | Certiorari<br><br>2015 TSPR 116<br><br>193 DPR \_\_\_\_ |

Número del Caso:     MC-2015-4


Fecha: 24 de agosto de 2015


Referido de:    Hon. Nelson Canabal Pérez
                Juez Administrador de Arecibo


Abogados del Lcdo. Rafael Capella Angueira:

            Lcdo. Virgilio Mainardi Peralta
            Lcda. Margarita Carrillo Iturrino

Oficina de la Procuradora General:

            Lcda. Karla Pacheco Álvarez
            Subprocuradora General

            Lcda. Gisela Rivera Matos
            Procuradora General Auxiliar



Materia: Conducta Profesional - La suspensión será efectiva el 3 de septiembre de 2015, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Adalberto Quiles Negrón<br>Claudia E. Hernández Cohen<br>Freddie L. Menéndez Rivera<br><br>Recurridos<br><br>Hon. Nelson J. Canabal Pérez<br><br>Peticionario | MC-2015-0004 | |

*PER CURIAM*

San Juan, Puerto Rico, a 24 de agosto de 2015

En esta ocasión, nos corresponde ejercer nuestra jurisdicción disciplinaria para evaluar la conducta del Lcdo. Rafael Capella Angueira. Específicamente, debemos determinar si las acciones que éste tomó en calidad de Director de la Sociedad para la Asistencia Legal (SAL) de la Oficina de Arecibo violentaron los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y, de ser así, las medidas disciplinarias que proceden.

I

El Lcdo. Rafael Capella Angueira fue admitido al ejercicio de la abogacía el 30 de noviembre de 1982 y al ejercicio de la notaría el 3 de agosto de 1983. El 13 de enero de 2015, el Honorable Juez Nelson Canabal Pérez, Juez Administrador de la Región Judicial de Arecibo, presentó una *Petición urgente al Honorable Tribunal*

*Supremo*. En ésta, el Juez Canabal Pérez nos refirió una situación preocupante que se había desarrollado en el Salón de Sesiones 204 de la mencionada región judicial, presuntamente producto de una serie de actuaciones del licenciado Capella Angueira, Director de la Oficina de la SAL en Arecibo. La presentación de la *Petición urgente* fue, a su vez, precedida y motivada por una resolución emitida el 31 de diciembre de 2014 por la Honorable Juez Isabel Lugo Báez –quien entonces presidía el Salón de Sesiones 204–, en el caso *Pueblo de Puerto Rico v. (1) Adalberto Quiles Negrón, (2) Claudia E. Hernández Cohen y (3) Freddie L. Menéndez Rivera*, imputados(as), VP2014-2688 al 2693; AR2014CR01248 y AR2014CR01264, mediante la cual solicitó la intervención de este Tribunal.[1]

En síntesis, el Juez Canabal Pérez señaló en su *Petición urgente* ante este Tribunal que, el 3 de diciembre de 2014, el licenciado Capella Angueira, en calidad de Director de la oficina de la SAL de Arecibo, emitió una directriz administrativa a su personal a efectos de que, hasta nuevo aviso, no aceptarán representar clientes cuyos

---

[1] El Juez Canabal Pérez acompañó su *Petición urgente* con esta resolución. En ésta, la Juez Lugo Báez detalló los antecedentes fácticos y procesales que la llevaron a solicitar la intervención de este Tribunal y anejó la documentación sustentando sus señalamientos con respecto a la alegada conducta del licenciado Capella Angueira. En lo pertinente, señaló que el licenciado Capella Angueira había denegado asumir la representación legal de los imputados indigentes en los tres casos señalados, había incumplido con disposiciones pertinentes del *Reglamento para la asignación de abogados y abogadas de oficio en procedimientos de naturaleza penal*, 4 L.P.R.A. Ap. XXVIII, y había desatendido órdenes del tribunal, entre otras cosas.

casos fuesen asignados al salón de sesiones presidido por la Juez Lugo Báez.[2] Según el Juez Canabal Pérez, estas instrucciones constituían un ataque colateral a su decisión de denegar, mediante resolución emitida el 24 de noviembre de 2014, una segunda solicitud de inhibición presentada por el licenciado Capella Angueira en contra de la Juez Lugo Báez en el caso *Pueblo de Puerto Rico v. José Cuadro Morales*, VPA2014-0227.[3] El licenciado Capella Angueira fundamentó su solicitud de inhibición en ese caso en el hecho de que había presentado una queja en contra de la Juez Lugo Báez ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (OAT).[4] En la solicitud de inhibición, el licenciado Capella Angueira adujo que, estando pendiente dicha queja, la Juez Lugo Báez debía inhibirse de todos los casos en que mediara representación legal de la SAL.

Luego de declarar la solicitud *no ha lugar*, el Juez Canabal Pérez recibió una carta del licenciado Capella

---

[2] Es menester señalar que al momento de la presentación de la *Petición urgente*, esta directriz continuaba en vigor.

[3] El licenciado Capella Angueira presentó la primera solicitud de inhibición el 5 de noviembre de 2014, ante la misma Juez Lugo Báez. Ésta la declaró no ha lugar el próximo día. Véanse Anejos 1 y 2 de Resolución del 31 de diciembre de 2014.

[4] Cabe destacar que el contenido de la queja no incide en lo absoluto en nuestra evaluación de las actuaciones del licenciado Capella Angueira. Por lo tanto, y en deferencia al trámite investigativo ordinario mediante el cual se atenderá la referida queja, nos abstenemos de mencionar las alegaciones específicas hechas por el licenciado, las cuales serán evaluadas en su día.

Angueira el 3 de diciembre de 2014.[5] En ésta, el licenciado le informó de la directriz que emitió ese día y las razones que lo llevaron a tomar ese curso de acción.[6]

Como consecuencia de la directriz del licenciado Capella Angueira, tres imputados, para quienes la SAL había realizado la correspondiente determinación de indigencia, no recibieron representación legal por parte de ésta.[7] Esto, puesto que sus casos fueron asignados al salón de sesiones presidido por la Juez Lugo Báez. Para estos casos, el licenciado Capella Angueira presentó mociones informativas indicando que los imputados habían sido entrevistados y certificados como indigentes. No obstante, informó que la SAL no asumiría su representación

[5] Esto, a pesar de que el licenciado Capella Angueira había solicitado un término para recurrir al Tribunal de Apelaciones, lo que no hizo.

[6] Concretamente, el licenciado Capella Angueira informó que "[e]n vista de que administrativamente no se ha hecho nada para salvaguardar los derechos de nuestros representados y el buen funcionamiento que debe imperar en la sala de [la Juez Lugo Báez] nos vemos en el deber de tomar una determinación administrativa [] y [e]fectivo inmediatamente no estaremos aceptando la representación de casos o acusados que estuvieren señalados en la sala que preside la Honorable Isabel Lugo Báez". El licenciado dirigió la carta al Juez Canabal Pérez, con copia a la Hon. Heidi Kiess Rivera, Juez Coordinadora de los Asuntos de lo Criminal, y la misma Juez Lugo Báez. Véase Anejo 5 de Resolución del 31 de diciembre de 2014.

[7] Dada la negativa de la SAL de asumir la representación legal de los imputados en *Pueblo de Puerto Rico v. Adalberto Quiles Negrón*, AR2014CR00839-6; *Pueblo de Puerto Rico v. Claudia E. Hernández Cohen*, AR2014CR01248; y *Pueblo de Puerto Rico v. Freddie L. Menéndez Rivera*, AR2014CR01264-1, éstos comparecieron a su vista preliminar sin representación legal. Así, la Juez Lugo Báez se vio obligada a tomar la medida cautelar de designar abogados de oficio para los tres imputados. Ello, a su vez, requirió reseñalar las vistas preliminares y generó una secuencia de complicaciones en el trámite de los correspondientes procedimientos criminales.

legal. Esto, sin hacer constar las razones detrás de tal denegatoria.[8] La Juez Lugo Báez, por su parte, ordenó al licenciado Capella Angueira exponer las razones por las cuales la SAL no asumiría la representación legal de los imputados indigentes.[9] El licenciado Capella Angueira, en una *Moción en cumplimiento de orden* explicó "que las mismas fueron notificadas previamente en la comunicación del 3 de diciembre de 2014".[10]

Además, según inicialmente alegó la Juez Lugo Báez, y posteriormente corroboró la Oficina de la Procuradora General, durante otro ciclo de conferencias en preparación para vistas preliminares, la alguacil Johanna Piñero Sánchez, Supervisora de la Unidad de Confinados del Centro Judicial de Arecibo, escuchó al licenciado Capella Angueira recomendarle a otros imputados, cuyos casos habían sido asignados al salón de sesiones presidido por

---

[8] Véanse Anejos III, X y XVII del Informe de la Procuradora General.

[9] La Regla 13(a) del *Reglamento para la asignación de abogados y abogadas de oficio en procedimientos de naturaleza penal* dispone, "[c]uando la Sociedad para Asistencia Legal o cualquier entidad análoga similar acepten representar a una persona imputada de delito, deberán notificar el nombre al tribunal mediante moción, el día en que asuman la representación legal o a más tardar al día siguiente. Asimismo, cuando denieguen representación legal a una persona imputada que asistió a una conferencia o entrevista, *deberán notificar mediante moción el nombre y las razones para la denegación*, el día en que la denieguen o a más tardar al día siguiente". 4 L.P.R.A. Ap. XXVIII R.13(a)(énfasis suplido). La regla provee una sola excepción al requisito de proporcionar las razones detrás de la denegación de representación legal: que existe un conflicto de intereses entre personas coacusadas de delito. En éstas circunstancias, bastará con indicar la existencia del mismo. Véase *id*.

[10] *Moción en cumplimiento de orden*. Véase Anejo 9 de Resolución de 31 de diciembre de 2014.

la Juez Lugo Báez que solicitaran que un juez distinto atendiera sus casos o que requirieran que se les nombrara un abogado de oficio.[11]

Conforme a los hechos reseñados, en su *Petición urgente,* el Juez Canabal Pérez nos solicitó que ordenáramos al licenciado Capella Angueira a: (1) cesar y desistir de no aceptar casos de personas indigentes asignados al Salón de Sesiones 204; (2) atenerse a lo dispuesto en su resolución del 24 de noviembre de 2014, o que, en la alternativa, procediera con el remedio judicial adecuado; (3) atenerse a las disposiciones pertinentes de las *Reglas de disciplina judicial*, 4 L.P.R.A. Ap. XV-B, y el *Reglamento de abogados y abogadas de oficio en procedimientos de naturaleza criminal*, 4 L.P.R.A. XXVIII; y, finalmente, (4) cumplir con los deberes éticos impuestos por los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Examinada la *Petición urgente* del Juez Canabal Pérez, y ante la presunta evasión reiterada por parte del licenciado Capella Angueira de proveer representación legal a imputados indigentes asignados a un salón de sesiones en particular, el 20 de enero de 2015, este Tribunal emitió una resolución ordenando a este último que se expresara dentro de un término de cinco días en torno a

---

[11] Como parte de su investigación, la Oficina de la Procuradora General se comunicó directamente con la señora Piñero Sánchez, quien nuevamente corroboró las expresiones hechas por el licenciado Capella Angueira. Véase Informe de la Procuradora General a la pág. 5.

la *Petición urgente* presentada. Específicamente, ordenamos que el licenciado Capella Angueira indicara cómo su conducta no constituía una violación a los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y no contravenía las normas, principios y preceptos constitucionales que informan nuestro sistema de justicia criminal. Oportunamente, el licenciado Capella Angueira compareció mediante *Moción asumiendo representación legal, de reconsideración y sobre otros extremos* y, entre otras cosas, solicitó que dejáramos sin efecto la resolución emitida. Esto, bajo el fundamento de que la misma representaba el comienzo de un proceso disciplinario por la vía sumaria. De otra parte, el licenciado nos informó que a partir de ese día, "los abogados que laboran para la Sociedad para Asistencia Legal en la Oficina de Arecibo *han estado compareciendo y continuarán compareciendo* a la Sala 204 del Tribunal de Primera Instancia, Sala de Arecibo en representación de los acusados indigentes que son elegibles para recibir los servicios de esta entidad".[12]

No obstante, en su comparecencia, el licenciado Capella Angueira no atendió las cuestiones sobre las cuales se le ordenó que se expresara. Así las cosas,

---

[12] *Moción asumiendo representación legal, de reconsideración y sobre otros extremos*, en la pág. 2 (énfasis suplido). El licenciado Capella Angueira acompañó su moción con copia de una misiva, con fecha de 23 de enero de 2015, informando al Juez Canabal Pérez de su nueva determinación, la cual sería efectiva inmediatamente.

referimos el asunto a la Oficina de la Procuradora General para que, dentro de un término de quince días, nos rindiera el informe correspondiente.[13]

El 17 de febrero de 2015, el licenciado Capella Angueira compareció nuevamente mediante *Contestación a "petición urgente al Honorable Tribunal Supremo"*. En ésta, expuso su posición con respecto a las alegaciones hechas en su contra. Es decir, dio cumplimiento, si bien tardíamente, a lo previamente ordenado. En su *Contestación*, el letrado no negó la conducta que el Juez Canabal Pérez y la Juez Lugo Báez le imputaron. En vez, explicó que su proceder estuvo en todo momento motivado por su interés en garantizar los derechos de los clientes indigentes representados por la SAL, a quienes, además, ha dedicado más de treinta años de labor profesional. Rechazó, pues, que sus acciones hayan formado parte de una maniobra para lograr por vía de coacción lo que no pudo a través del trámite judicial —es decir, la inhibición de un juez—, y negó que su intención haya sido atacar colateralmente una determinación judicial o menospreciar la autoridad del tribunal.

El 24 de febrero de 2015, la Procuradora General presentó su Informe. En éste, concluyó que el letrado

---

[13] Además, mediante la resolución certificada el 9 de febrero de 2015, este Tribunal declaró no ha lugar a la moción de reconsideración presentada por el licenciado Capella Angueira y ha lugar a su solicitud de representación legal.

incurrió en conducta violatoria de los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Evaluado el *Informe de la Procuradora General* y la *Contestación* presentada previamente por el licenciado Capella Angueira, el 27 de febrero de 2015, emitimos una resolución concediéndole a este último cinco días para que se expresara en torno a las determinaciones y conclusiones presentadas por la Procuradora General. Oportunamente, el licenciado Capella Angueira presentó una *Réplica al informe de la Procuradora General y en cumplimiento de orden*. Asimismo, la SAL y el Juez Canabal Pérez presentaron comparecencias especiales los días 9 y 26 de marzo y el 17 de marzo de 2015, respectivamente.[14]

Contando con el beneficio del Informe de la Oficina de la Procuradora General y con la comparecencia de todas las partes concernidas, procedemos a evaluar las presuntas violaciones a los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por parte del licenciado Capella Angueira.

II.

El Canon 1 del Código de Ética Profesional le impone a todo abogado y abogada el deber de luchar a favor de que toda persona tenga acceso a una representación legal que sea "capacitada, íntegra y diligente". 4 L.P.R.A. Ap. IX,

---

[14] El licenciado Capella Angueira, por su parte, compareció nuevamente el 1 de abril de 2015, mediante *Escrito en relación a comparecencia especial del 17 de marzo de 2015, del Hon. Nelson Canabal Pérez*.

C.1.   Dispone el Canon que, en la consecución de este objetivo, los profesionales de Derecho deben esforzarse por proveer servicios legales gratuitos a personas indigentes, "especialmente en lo que se refiere a la defensa de acusados y a la representación legal de personas insolventes". *Id*.   En el ámbito penal, este llamado adquiere mayor importancia.   Ello, sin duda, en atención a los intereses implicados y las posibles consecuencias a las que está sujeto un imputado de delito una vez el Estado inicia un procedimiento criminal en su contra.

El Canon 1, además, está íntimamente relacionado con preceptos constitucionales y estatutarios de máxima envergadura en nuestro sistema de justicia. Particularmente, la obligación de aceptar casos de personas indigentes acusadas de delitos que encarna el Canon 1 responde a la garantía del derecho a asistencia de abogado en todos los procesos criminales dispuesta en la Sección 11 de la Carta de derechos de nuestra Constitución. Véase Const. P.R. Art. II, sec. 11. [15] Asimismo, distintos preceptos estatutarios viabilizan el cumplimiento con este mandato constitucional.[16]   Además, lo

---

[15] Cabe destacar que la misión de la SAL es, justamente, hacer efectivo este mandato constitucional.

[16] Concretamente, las Reglas 57 y 159 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II. R.57; R.159, establecen que, de un acusado comparecer sin representación legal a una vista o a juicio, el tribunal viene obligado a informarle sobre su derecho de contar con asistencia de un abogado o abogada defensor y, de ser

resuelto por este Tribunal en *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599 (1993) y la posterior adopción del *Reglamento para la asignación de abogados y abogadas de oficio en procedimientos de naturaleza penal*, 4 L.P.R.A. Ap. XXVIII representaron pasos firmes en dirección a garantizar el acceso a representación legal para personas indigentes.[17]

Precisamente en atención a este andamiaje constitucional y legislativo, este Tribunal ha afirmado que "[l]a obligación de los abogados de brindar representación legal gratuita a las personas de escasos recursos, *en la esfera penal*, surge de la Constitución del Estado Libre Asociado y, en términos más específicos, de las Reglas de Procedimiento Criminal y del Canon 1". *In re Rodríguez Santiago*, 157 D.P.R. 26, 30 (2002). De la misma manera, hemos señalado que esta obligación es un corolario de la naturaleza y función eminentemente pública de la profesión legal y se deriva del hecho de que todo abogado y abogada es un oficial del tribunal. Véase *In re Rodríguez Santiago*, 157 D.P.R. 26, 31 (2002). Constituye,

---

necesario, nombrarle uno que, en adelante, le proveerá sus servicios sin costo para él.

[17] En *Ramos Acevedo v. Tribunal Superior*, luego de reconocer que el derecho a tener representación legal en casos criminales forma parte fundamental del debido proceso de ley, expresamos que la obligación de proveer asistencia de abogado a los indigentes no recae exclusivamente en el Estado, sino que constituye "una obligación compartida con los abogados admitidos al ejercicio de la profesión". 133 D.P.R. a la pág. 612.

pues, conducta no sólo reprochable, sino además sancionable, el que un letrado se niegue a ofrecer sus servicios profesionales a un indigente a quien se le encausa criminalmente, sin aducir una razón legítima que pueda anteponerse ante el interés apremiante de garantizarle su derecho constitucional a contar con representación legal. *In re Rodríguez Santiago*, 157 en la pág. 37. Véase, además, *In re Roldós Matos y otros*, 161 D.P.R. 373 (2004).

En este sentido, no se puede olvidar que, además de tener la responsabilidad de defender honesta y competentemente los intereses de su cliente, los abogados y abogadas desempeñan una función social a través de su aportación imprescindible a la materialización de la Justicia. *In re Román*, 165 D.P.R. 801, 807 (2005). Al desempeñar esta función, todo profesional de Derecho tiene, pues, el deber de conformar su conducta a aquellos principios dirigidos a asegurar el justo y buen funcionamiento de nuestro sistema de Justicia.

Conforme a lo anterior, el Canon 9 del Código de Ética Profesional obliga a todo abogado y abogada a "observar para con los tribunales una conducta que se caracterice por el mayor respeto". 4 L.P.R.A. Ap. IX, C.9. En numerosas ocasiones hemos señalado que esta norma exige que los profesionales de Derecho sean diligentes en el trámite de los casos de sus clientes y, particularmente, en lo que respecta a obedecer y responder prontamente las

órdenes emitidas por los tribunales. *In re Hoffman Mouriño*, 170 D.P.R. 968 (2007). Desatender esas órdenes representa un grave menosprecio a la autoridad del tribunal y constituye, por lo tanto, una clara violación al Canon 9. Por otro lado, el Canon también requiere que cuando profesionales de Derecho se dirijan al tribunal o a uno de sus funcionarios lo hagan con respeto y deferencia. Véase *In re Crespo Enríquez*, 147 D.P.R. 656, 662-663 (1999).

En resumen, podemos colegir que el deber de respeto que surge del Canon 9 propiamente tiene dos vertientes. La primera implica el deber de respetar las órdenes y directrices emitidas por los tribunales, las cuales, a su vez, solamente pueden ser impugnadas por medio de los cauces apelativos apropiados. Sigfrido Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado*, 313 (2010). La segunda, enuncia el deber de los abogados y abogadas de respetar a "jueces, empleados y funcionarios del tribunal, tanto en comparecencias formales, personales o por escrito, como cuando interactúa[n] informalmente con éstos". *Id.* Si bien este Tribunal ha reconocido la crítica judicial sana y oportuna como "un medio necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones", *In re Crespo Enríquez*, 147 D.P.R. 656, 663 (1999), claramente ello no significa que los profesionales de Derecho "tiene[n] licencia absoluta en el uso del lenguaje para poner en

entredicho o mancillar la dignidad de los jueces". *In re Rochet Santoro*, 174 D.P.R. 123, 131 (2008) (citando a *In re López de Victoria I*, 163 D.P.R. 1, 8 (2004)). En cuanto a la primera vertiente del Canon 9, hemos enfatizado lo siguiente:

> Ante determinaciones adversas, los abogados poseen las herramientas que el propio ordenamiento les provee para que éstas puedan ser revisadas. Como bien dijimos en *Pueblo v. Susoni*, 81 D.P.R. 124, 154 (1959), "[e]l comportamiento judicial que de alguna manera afecta los derechos de un acusado o litigante, puede llevarse al récord para la acción correctiva que proceda por un tribunal superior a tenor con lo que deba ser un juicio imparcial y justo". (citas omitidas).

*In re Crespo Enríquez*, 147 D.P.R. en la pág. 663. En otras palabras, nuestro ordenamiento provee los remedios adecuados para aquellas situaciones en las que un abogado o abogada entienda que los intereses de su cliente, o los suyos, han sido perjudicados. En atención a la autoridad que ostentan los tribunales de justicia y a la deferencia y respeto que éstos merecen, es a esos remedios a los que los profesionales de Derecho están obligados a recurrir para vindicar sus reclamos.

Con relación al deber de respeto para con los tribunales, el Canon 12 complementa lo dispuesto en el Canon 9 al establecer que:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. *Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución.*

4 L.P.R.A. Ap. IX, C.12 (énfasis suplido).

Este deber de puntualidad y diligencia aplica en todas las etapas de un litigio y, en la práctica, exige que los abogados y abogadas adopten toda medida a su alcance para evitar que se entorpezca y dilate innecesaria e injustificadamente la tramitación de los procedimientos judiciales. Véase *In re Nieves Nieves*, 181 D.P.R. 25 (2011). Esta obligación no solamente se debe al tribunal, sino también a los compañeros abogados y, por supuesto, al cliente mismo. *In re Roldós Matos*, 161 D.P.R. 373, 384 (2004). Al igual que surge del Canon 9, esta norma "requiere que los abogados presten atención minuciosa, sean diligentes y cumplan con las órdenes del tribunal". *In re García Ortiz*, 187 D.P.R. 507, 517 (2012).

Por otra parte, el deber que todo profesional de Derecho tiene de "defender los intereses de su cliente con el compromiso de emplear 'la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez'" constituye una piedra angular de nuestro sistema de Justicia. *In re Rivera Ramos*, 178 D.P.R. 651, 664 (2010), (citando a *In re Cuevas Velázquez*, 174 D.P.R. 433, 442 (2008)). Por ello, el Canon 18 del Código de Ética Profesional establece que los abogados y abogadas están llamados a "defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y

responsable". 4 L.P.R.A. Ap. IX, C.18. Ser diligente, implica "reali[zar] las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia". Sigfrido Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado*, 179 (2010). Esencialmente, "todo abogado cuyo desempeño profesional no sea adecuado, responsable, capaz y efectivo incurrirá en una violación al Canon 18". *In re Pérez Riveiro*, 180 D.P.R. 193, 202 (2010).

**III**

Como anticipamos, en el presente caso, la Procuradora General determinó en su Informe que el licenciado Capella Angueira incumplió con los Cánones 1, 9, 12 y 18 de Ética Profesional, 4 L.P.R.A. Ap. IX, al negar representación legal a indigentes imputados debido a que sus casos estaban asignados al Salón de Sesiones 204 que presidía la Juez Lugo Báez, contra quien el letrado había presentado una queja ante la OAT. Luego de evaluar los hechos pertinentes, coincidimos con la apreciación de la Procuradora General.

Según señaló el propio licenciado Capella Angueira en la directriz que emitió el 3 de diciembre de 2014, la orden que originó la presente acción respondió a que, estando una queja pendiente contra la referida Juez, entendía que no era propio que los abogados y abogadas de

la SAL aceptaran casos asignados al salón que presidía. Alegó, además, que, toda vez que "administrativamente no se ha hecho nada para salvaguardar los derechos de nuestros representados",[18] se vio obligado a tomar esa determinación. En sus comparecencias ante este Tribunal, el licenciado Capella Angueira ha reiterado que, dentro de las circunstancias, consideró la medida como una necesaria para garantizar los derechos de los clientes de la SAL y que, contrario a lo alegado tanto por el Juez Canabal Pérez en la *Petición urgente* como por la Juez Lugo Báez en la resolución que emitió el 31 de diciembre de 2014, nunca pretendió que la referida Juez fuera sustituida por un magistrado que fuera de su beneplácito.

A pesar de que el licenciado Capella Angueira alega haber actuado conforme a lo que entendía eran los mejores intereses de los imputados indigentes cuya representación la SAL suele asumir, el curso de acción seguido en la consecución de esos intereses fue, a todas luces, errado y en clara contravención de los postulados que informan nuestro ordenamiento procesal criminal. Asimismo, las actuaciones del licenciado Capella Angueira transgreden los deberes éticos profesionales que recogen los Cánones 1, 9, 12 y 18. Veamos.

En primer lugar, la decisión del licenciado Capella Angueira de emitir la directriz en controversia tuvo el efecto real de negarle a un grupo de imputados indigentes

---

[18] Véase Anejo 5 de Resolución de 31 de diciembre de 2014.

su derecho constitucional y estatutario a representación legal en un procedimiento criminal iniciado en su contra. No existe controversia con respecto a que los imputados en los casos *Pueblo v. Adalberto Quiles Negrón*, *Pueblo v. Claudia Hernández Cohen* y *Pueblo v. Freddie L. Menéndez*, fueron certificados por representantes de la SAL como indigentes conforme a las disposiciones reglamentarias pertinentes. Sin embargo, debido a una determinación administrativa sin apoyo legal tomada por el licenciado Capella Angueira, éstos terminaron compareciendo a sus vistas preliminares sin la debida asistencia legal. Lo que es peor, la directriz del licenciado Capella Angueira obligó a los subalternos de éste en la oficina de la SAL de Arecibo a incurrir en violaciones éticas al negarse a asumir la representación legal de indigentes cuyos casos fueran asignados a la sala de la Juez Lugo Báez.

Asimismo, la directriz representó la asunción, por parte del licenciado Capella Angueira, de una actitud evidentemente desafiante ante la autoridad del tribunal. Al arrogarse la facultad de determinar en qué casos la SAL asumiría representación legal y en cuáles no, en función del magistrado que presidirá la vista correspondiente, el licenciado Capella Angueira obstruyó de manera directa el buen funcionamiento de nuestro sistema de justicia criminal. Ello, a su vez, generó dilaciones injustificadas en la tramitación de casos en el salón de sesiones correspondiente, ya que obligó a la Juez Lugo

Báez a reseñalar vistas y designar abogados de oficio en casos que, en circunstancias ordinarias, serían atendidos por el personal de la SAL. Esa actuación no solo demuestra una falta de respeto hacia al tribunal, sino también hacia los compañeros abogados y abogadas que tuvieron que asumir, innecesariamente, la representación legal de estos indigentes imputados.

El licenciado Capella Angueira agravó el panorama anterior al incumplir con el requisito de notificar las razones por las cuales la SAL no asumiría la representación legal de los imputados y luego desatender las órdenes del tribunal de cumplir con tal deber. Ciertamente, la denegatoria de una solicitud de inhibición no constituye, bajo ningún concepto, una razón legítima para negarse a comparecer ante un juez en particular y, consiguientemente, rechazar clientes para los cuales la SAL usualmente asumiría representación legal.

Además, la decisión de recomendarle a los imputados entrevistados que solicitaran que otro juez atendiera sus casos o que requirieran que se les nombrara un abogado de oficio, constituye una afrenta a la autoridad judicial y al buen funcionamiento de nuestros tribunales.

Por todo lo anterior, este Tribunal no puede sino expresar su más profundo repudio hacia la conducta en que incurrió el licenciado Capella Angueira y la posición en la que éste colocó tanto a los abogados y abogadas de la SAL que laboran bajo su dirección, como a los imputados

afectados por sus decisiones administrativas. Éste abusó de su posición de poder para, sin base jurídica alguna, emitir una directriz administrativa que tuvo el efecto nefasto de negarle a un grupo de imputados indigentes su derecho constitucional y estatutario a contar con asistencia legal en un procedimiento criminal, todo ello en contravención de varios postulados básicos de nuestro ordenamiento disciplinario.

IV

Tras haber determinado que el licenciado Capella Angueira incurrió en las violaciones éticas que se le imputan, resta por fijar la sanción que procede. Sabido es que, al momento de determinar la sanción disciplinaria que se impondrá a un abogado o abogada que ha transgredido las normas que rigen el ejercicio de la profesión del Derecho en nuestra jurisdicción, este Tribunal puede tomar en consideración la presencia de circunstancias atenuantes. En ocasiones previas, hemos identificado algunas de ellas, a saber: (1) la buena reputación del abogado o abogada en la comunidad; (2) su historial previo; (3) si se trata de su primera falta disciplinaria; (4) el perjuicio, si alguno, sufrido por las partes implicadas; (5) si se trata de un incidente aislado; (5) si medió ánimo de lucro, y (6) cualquier otra consideración que este Tribunal entienda pertinente al momento de evaluar la conducta imputada. *In re Hernández González*, 188 D.P.R. 721, 729 (2013).

En el caso del licenciado Capella Angueira, ésta es la primera vez que determinamos que ha incurrido en conducta contraria a los Cánones de Ética Profesional y su expediente personal refleja que nunca ha sido objeto de una queja disciplinaria. Asimismo, su historial profesional refleja más de tres décadas de compromiso con las comunidades más vulnerables y desventajadas de nuestro País, trabajo que ha realizado con pasión y orgullo, según la misma Procuradora General también reconoce. A su vez, debemos destacar que el licenciado Capella Angueira revaluó su determinación y se retractó de la directriz que dio origen a esta controversia tan pronto fue apercibido por este Tribunal. Además, es importante notar que no medió ningún ánimo de lucro en su proceder y que, finalmente, en sus comparecencias, ha destacado que esta situación lamentosa ha sido aleccionadora para él.

De otro lado, es un hecho irrefutable que en el presente caso las partes más estrechamente implicadas –es decir, los indigentes imputados cuyos derechos a contar con representación legal fueron vulnerados– sufrieron un perjuicio sustancial como consecuencia directa de las faltas éticas del licenciado Capella Angueira. Asimismo, el que el letrado haya desistido de sus pretensiones una vez fue advertido por este Tribunal, evitando así causarle aún mayores perjuicios a la comunidad a la que la SAL está llamada a servir y a nuestro sistema de justicia criminal en general, no puede tener el efecto de totalmente

aminorar la gravedad de las violaciones éticas ya cometidas. No dudamos del licenciado Capella Angueira cuando asevera que el proceso de marras ha sido doloroso, difícil y aleccionador y que en lo sucesivo habrá de ser más riguroso al momento de descargar sus funciones y responsabilidades.[19] No obstante, en el balance final, este Tribunal no puede titubear al momento de ejercer su autoridad disciplinaria con el rigor que exige una controversia como ésta. Tampoco puede eludir su deber de transmitir un mensaje contundente e inequívoco a la profesión legal a los efectos de que este tipo de conducta no solamente no será permitida, sino que acarreará serias consecuencias. Así, por los fundamentos anteriormente reseñados, y en atención a la gravedad de las violaciones cometidas por el licenciado Capella Angueira en contravención a los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, se suspende al licenciado Capella Angueira del ejercicio de la abogacía y la notaría por un término de *tres meses* contado a partir de la notificación de la presente Opinión Per Curiam y Sentencia.

El licenciado Capella Angueira deberá notificar a sus clientes de su inhabilidad de poder continuar representándolos y devolverá a éstos los expedientes de todo caso que ya haya atendido o que esté pendiente de resolución y, además, todos los honorarios que haya

---

[19] *Réplica al informe de la Procuradora General y en cumplimiento de orden* en las págs. 10 y 12.

percibido por trabajos no realizados. De igual manera, deberá informar su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente. El letrado deberá acreditar y certificar el cumplimiento con todo lo anterior, dentro de un término de treinta días, contado a partir de la notificación de la presente Opinión Per Curiam y Sentencia. Por último, se le ordena al Alguacil de este Tribunal incautar inmediatamente la obra y el sello notarial del licenciado Capella Angueira y entregarlos al Director de la Oficina de Inspección de Notaría para la correspondiente inspección e informe.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>    Recurrido<br><br>      v.<br><br>Adalberto Quiles Negrón<br>Claudia E. Hernández Cohen<br>Freddie L. Menéndez Rivera<br><br>    Recurridos<br><br>Hon. Nelson J. Canabal Pérez<br><br>    Peticionario | MC-2015-0004 |

SENTENCIA

San Juan, Puerto Rico, a 24 de agosto de 2015

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se suspende al Lcdo. Rafael Capella Angueira del ejercicio de la abogacía y la notaría por un término de tres meses, contado a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

El licenciado Capella Angueira tiene el deber de notificar a todos sus clientes de su inhabilidad de seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos en los que tenga algún caso pendiente. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta (30) días a partir de la notificación de esta Sentencia. El Alguacil de este Tribunal deberá incautarse de la obra y sello notarial del licenciado Capella Angueira, debiendo entregar los mismos a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión concurrente en parte y disidente en parte a la cual se une la Jueza Asociada Oronoz Rodríguez. El Juez Asociado señor Estrella Martínez concurre sin opinión escrita. La Jueza Presidenta señora Fiol Matta no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Adalberto Quiles Negrón<br>Claudia E. Hernández Cohen<br>Freddie L. Menéndez Rivera<br><br>Recurridos<br><br>Hon. Nelson J. Canabal Pérez<br><br>Peticionario | MC-2015-0004 |

Opinión concurrente en parte y disidente en parte de la Juez Asociada señora Rodríguez Rodríguez a la cual se une la Jueza Asociada Oronoz Rodríguez

San Juan, Puerto Rico, a 24 de agosto de 2015

En el día de hoy, se sanciona desmedidamente a un integrante de la profesión legal que, si bien incurrió en faltas éticas, cuenta con el beneficio de una trayectoria profesional laudable en el servicio público de nuestro País. Es por ello que disiento de la sanción impuesta.

Tras concluir que el Lcdo. Rafael Capella Angueira incurrió en conducta contraria a las exigencias de los Cánones 1, 9, 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 1, 9, 12 y 18, una mayoría de este Tribunal ordena su suspensión del ejercicio de la abogacía por un término de tres meses. A pesar de que estoy de acuerdo con la determinación de que el licenciado Capella Angueira cometió las faltas éticas que se le imputan y que, por lo tanto, procede que este Tribunal le imponga

una sanción disciplinaria, estimo que la medida adoptada por una mayoría de este Tribunal es, a la luz de los hechos y circunstancias del caso, y los intereses que el proceso disciplinario tutela,[20] excesiva y, en última instancia, desproporcionada en comparación con la gravedad de las faltas cometidas.

                                    I

No existe controversia en torno a los hechos que dieron origen al procedimiento disciplinario de marras.[21] Tras la correspondiente evaluación de éstos y un análisis de los planteamientos elaborados por las partes implicadas en sus respectivas comparecencias, este Tribunal concluye que el licenciado Capella Angueira incurrió en violaciones a los deberes éticos contenidos en los Cánones 1, 9, 12 y

---

[20] Cabe destacar que, en el pasado, nos hemos expresado en torno a la naturaleza y función del proceso disciplinario. *Véanse In re Sánchez Ramos*, 174 D.P.R. 453, 467 (2008) ("[E]l norte de todo procedimiento disciplinario es proteger al público y a la profesión legal, por lo que toda pretensión ajena a dicho propósito no será motivo para que este Foro emprenda la delicada encomienda de sancionar disciplinariamente a un abogado".); *In re García Aguirre*, 175 D.P.R. 433, 441 (2009) ("El fin del procedimiento disciplinario no es castigar al abogado, sino proteger al público y a la profesión legal mediante una investigación de las condiciones morales del letrado para determinar si puede continuar ejerciendo la abogacía".).

[21] En sus comparecencias ante este Tribunal, el licenciado Capella Angueira tampoco refuta los hechos esenciales que provocaron que se iniciara un procedimiento disciplinario en su contra. En éstos, el letrado más bien intenta contextualizar los mismos en un esfuerzo por demostrar que su actuación no contravino los estándares mínimos de comportamiento profesional que exigen los Cánones del Código de Ética Profesional. En la alternativa, plantea que la presencia de varios atenuantes justifica que no se le sancione.

18 del Código de Ética Profesional. 4 L.P.R.A. Ap. IX C. 1, 9, 12 y 19. Como indiqué, no existen mayores divergencias de criterio entre los miembros de este Tribunal con respecto a esta determinación. Lo que ha generado diferencias, y la razón por la cual me veo obligada a disentir, se limita a la sanción que corresponde imponer en atención a esas violaciones.

Contrario a otras jurisdicciones, nuestro ordenamiento disciplinario es silente con respecto al tipo de sanción que procede luego de una determinación de que un integrante de la profesión legal ha transgredido una, o varias, de las normas que regulan el ejercicio de la abogacía. Dicho de otra manera, en nuestro Código de Ética Profesional, "las sanciones no están predeterminadas por tipos de infracción" y, por lo tanto, "no existen categorías de faltas con las correspondientes categorías de sanciones aplicables". Sigfrido Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado*, 368 (2010). Lo cierto es que, al amparo de los preceptos sustantivos y procesales vigentes, este Tribunal goza de un alto –algunos comentaristas lo tildarían de excesivo- grado de discreción al momento de determinar la sanción correspondiente a una violación de índole ética.

Ahora bien, en teoría, esta laguna se subsana mediante la aplicación sistemática y ponderada del precedente judicial. Así, "las sanciones pudieran considerarse como predeterminadas para casos futuros análogos a los

previamente resueltos por el Tribunal". Sigfrido Steidel Figueroa, *Id.* Lamentablemente, este Tribunal no ha sido consistente en el ejercicio de sus prerrogativas disciplinarias. Esta tendencia podría explicarse de dos maneras. Por una parte, la inconsistencia podría atribuírsele a una falta de interés de atender con el rigor necesario los asuntos relacionados con conducta profesional. Esto podría explicar, a su vez, el hecho de que nuestro Código de Ética Profesional haya permanecido virtualmente inalterado por más de cuatro décadas.[22] De otra parte, en la práctica, hemos claudicado a nuestro deber de exteriorizar cabalmente el racionamiento colectivo y/o individual detrás de las adjudicaciones en los méritos de los asuntos disciplinarios ante nuestra consideración. Ciertamente, son pocas las instancias en las que este Tribunal ha llevado a cabo un análisis comparativo de conductas análogas evaluadas en casos anteriores.[23]

Esta imprecisión e insuficiencia al momento de descargar nuestras funciones disciplinarias, por las que respondemos todos los integrantes de este Foro, afecta de manera directa a los miembros de la profesión legal y

---

[22] Convido a mis compañeros y compañeras a aprovechar la coyuntura que supone la actualización, adecuación y atemperación de nuestro Código de Ética Profesional para incluir estándares claros que guíen nuestra discreción al momento de imponer sanciones. Esto, en aras de evitar actuaciones arbitrarias, o que creen la impresión de arbitrariedad, al momento de ejercer nuestra jurisdicción disciplinaria.
[23] *Véanse In re Rivera Ramos*, 178 D.P.R. 651 (2010); *In re González Acevedo*, 165 D.P.R. 81 (2005).

tiene graves consecuencias en nuestro ordenamiento disciplinario. La principal es que despoja a éste del grado de coherencia y consistencia que requiere para que sea plenamente efectivo. Si bien la consistencia en las decisiones dictadas por este Tribunal Supremo no constituye una garantía absoluta de la corrección de las mismas, resulta ser un elemento de gran importancia, puesto que no solo confiere estabilidad, confiabilidad y credibilidad a nuestro sistema de justicia, sino que, desde un punto de vista institucional, asegura que todos sean juzgados de forma consistente y según las mismas reglas. Después de todo, "[l]a estabilidad, la certeza, la eficacia y la reducción de arbitrariedad en la toma de decisiones judiciales son valores axiomáticos del Derecho y de un sistema de justicia objetivo y confiable". *Rodríguez v. Hospital*, 186 D.P.R. 889, 927 (2012) (Rodríguez Rodríguez, J., Op. Concurrente y Disidente).

La importancia de la consistencia adquiere mayor relevancia en el contexto disciplinario, puesto que, en casos de suspensiones y separaciones permanentes del ejercicio de la abogacía, éstas inciden directamente en la fuente de sustento de muchos profesionales del Derecho. Por esta razón, su determinación es un asunto que exige profunda atención y deliberación y se rige por las garantías del debido proceso de ley. Asimismo, el ejercicio de nuestra jurisdicción disciplinaria exige que indaguemos en torno al propósito de las sanciones que

imponemos y su relación con la conducta que se quiere

disuadir. [24]   Es decir, supone un juicio informado de

proporcionalidad, el cual ha de tomar en consideración las

múltiples circunstancias concomitantes a la conducta

evaluada. No debemos pasar por alto, además, que las

consecuencias de una sanción disciplinaria no son

meramente económicas; el prestigio y la reputación del

profesional de Derecho al que este Tribunal sanciona

también se afectan significativamente.

## II

Según se desprende de los hechos reseñados en la

Opinión *Per Curiam* que antecede, la directriz emitida por

el licenciado Capella Angueira representa el aspecto más

significativo de la conducta que nos corresponde evaluar.

Sin duda, la referida directriz constituyó un craso error

de juicio por parte del licenciado Capella Angueira que no

se justifica y que por el contrario, merece nuestro más

enérgico rechazo.  No obstante, una apreciación integral

---

[24] En cuanto a la relación entre un estándar adjudicativo consistente y el propósito de las sanciones disciplinarias, en otras jurisdicciones se ha afirmado que

> Our purpose in imposing sanctions is to deter other lawyers from similar conduct; to assure the public that we will maintain the ethics of the profession; and to appropriately reflect our view of the attorney's fitness to practice law. The standard we apply tailor the circumstances of each case, giving respectful consideration to the recommendations of the commission and also taking into account our decisions in earlier similar cases.

Committee on Professional Ethics and Conduct of the Iowa State Bar Ass'n v. Baudino, 452 N.W. 2d 455, 459 (Iowa, 1990).

de los hechos y un estudio sosegado y sin ánimo prevenido
del expediente profesional del licenciado, me hacen
discrepar del criterio mayoritario en cuanto a la sanción
impuesta, a saber: suspensión temporera del licenciado
Capella Angueira del ejercicio de la profesión legal.
Máxime, cuando hace menos de dos meses la mayoría que hoy
suspende al licenciado Capella Angueira optó por meramente
apercibir a una funcionaria que al día de hoy ocupa un
puesto en la legislatura de nuestro País, de que en el
futuro debía ser más "rigurosa" en su facturación por el
trabajo rendido.[25]   Hoy por el contrario, la mayoría opta
por imponer la sanción más inclemente; la de suspender de

---

[25] En aquella ocasión, una mayoría de los integrantes de
este Tribunal ordenó el archivo de una queja disciplinaria
que involucraba imputaciones éticas serias, consistentes
en irregularidades relacionadas con la facturación
indebida a un municipio del Estado Libre Asociado de
Puerto Rico. Esstas imputaciones fueron producto de los
señalamientos contenidos en un informe de auditoría de las
operaciones fiscales del Municipio de Canóvanas que rindió
la Oficia del Contralor de Puerto Rico. Al así proceder,
la mayoría se limitó a un mero apercibimiento a la letrada
en cuestión a los efectos de que, en el futuro, debía ser
"sumamente rigurosa para asegurarse de que el contenido de
sus facturas revel[ara] con corrección los detalles que
requiere el cobro de honorarios por servicios legales
prestados". *In re María M. Charbonier Laureano*, 2015
T.S.P.R. 91, 191 D.P.R. ___ (2015). Esto, a pesar de que
los fondos en controversia eran, propiamente, fondos
públicos.
   Al valorar la severidad de la sanción que hoy se
impone frente al archivo de la queja en el caso antes
mencionado, parece acertada la crítica de que, en el
ejercicio de nuestra jurisdicción sobre conducta
profesional, "las sanciones disciplinarias parecen
depender más de quién se trata y no de la conducta
incurrida". Guillermo Figueroa Prieto, *Conducta
profesional*, 74 Rev. Jur. U.P.R. 495, 529 (2005).

la profesión legal a un *verdadero servidor público* quien, por más de tres décadas, ha provisto servicios legales de primer orden a los más necesitados. Y quien ha antepuesto, consistentemente, los intereses de sus clientes a cualquier utilidad *económica, profesional o política* que pudiese derivar de sus funciones. La suspensión del licenciado Capella Angueira, priva, además, a un sector marginado de nuestra población de un líder comprometido con garantizar el reconocimiento de sus derechos en todo procedimiento criminal.

Por los fundamentos esbozados anteriormente, disiento de la sanción que hoy se le impone al licenciado Capella Angueira. Esto, por entender que la misma no es cónsona con la conducta que se le imputa y no refleja una evaluación ponderada de los atenuantes que obran a favor del licenciado. Por mi parte, hubiese circunscrito la sanción a una censura enérgica acompañada de un apercibimiento general a efectos de que, en lo sucesivo, conducta de la naturaleza incurrida por el licenciado Capella Angueira acarreará sanciones más severas.


Anabelle Rodríguez Rodríguez
Juez Asociada